[No. 12244. In Bank. — March 22, 1889.]

# JAMES M. LEARNED ET AL., APPELLANTS, v. C. C. CASTLE ET AL., RESPONDENTS.

NUISANCE — OVERFLOW OF WATER — INJUNCTION — DAMAGES — MAXIM. — To cause water to flow wrongfully upon another's land which would not flow there naturally is to create a nuisance *per se;* and the right to an injunction to prevent the nuisance does not depend upon the extent of the damage measured by a money standard; nor does the maxim, *De minimis,* etc., apply, even though the damage should be merely nominal. The fact that the continuance of the wrongful act might ripen into a right in the nature of an easement or servitude is sufficient to justify an injunction, irrespective of damages.

ID. — CONFLICT OF FINDINGS — REVIEW ON APPEAL. — When one part of contradictory findings could support the judgment, and another part would necessarily upset it, the judgment must be reversed. Findings that waters diverted by a canal of defendants do flow upon the lands of the plaintiff, and that certain embankments of the canal cause water to flow thereon which would not flow there if such embankments were removed, are inconsistent with findings that the results of the acts of the defendants are not an obstruction to the free use of plaintiff's property, and do not interfere with the enjoyment thereof.

ID. — DAMAGES — MINGLING OF WATER — FINDING AGAINST EVIDENCE. — Where the evidence clearly shows that plaintiffs were largely and seriously damaged by water flowing over their land, and that a very large part of the water was caused to flow there by the act of defendants, though mingled with a larger volume of water flowing from other sources, a finding that the damage caused by the acts of the defendants was to the extent of only one dollar is against evidence.

ID. — CONTRIBUTION TO DAMAGE BY WRONG-DOER. — A wrong-doer who contributes to a damage cannot escape liability because his proportional contribution to the result cannot be accurately measured.

ID. — APPEAL — LAW OF CASE — SUFFICIENCY OF PLEADING. — The determination by this court upon a former appeal as to the sufficiency of the complaint to state a cause of action for relief in equity for the abatement of a nuisance is conclusive upon a second appeal.

ID. — ACQUIESCENCE OF GRANTOR. — The acquiescence of plaintiff's grantor in an act of the defendant constituting a nuisance is no defense to plaintiff's cause of action for an injunction against a continuance of the nuisance.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order refusing a new trial.

The facts are stated in the opinions rendered in Bank and in Department Two, and on the first appeal reported in 67 Cal. 41.

*Garber, Thornton & Bishop*, for Appellants.

The undoubted rule of law is, that where one without right causes water to flow upon another's land, to any extent whatever, which but for his wrongful act would not flow there, it is a nuisance *per se*, importing at least nominal damages, and entitles the injured party to relief by injunction or otherwise, especially where, as here, the continuance of the injury would ripen into a right in the nature of an easement or servitude. (Wood on Nuisances, 2d ed., pp. 416, 417, 445, 639, 370, 385, 386; Gould on Waters, sec. 214; 1 Sutherland on Damages, 13; *Casebeer* v. *Mowry*, 55 Pa. St. 419; 93 Am. Dec. 766; *Tootle* v. *Clifton*, 22 Ohio St. 247; 10 Am. Rep. 732; *Richards* v. *Dower*, 64 Cal. 64; *Johnson* v. *Rochester*, 13 Hun, 285; *Forty-second St. etc. R. R. Co.* v. *Thirty-fourth St. R. R. Co.*, 52 N. Y. Sup. Ct. 252; *Poirier* v. *Fetler*, 20 Kan. 47, 50.) It is well settled, also, that a party whose wrongful act in flowing water upon another's land causes nominal damages, which if continued will confer an easement or servitude, will not be relieved of liability by the fact that there were other predominant causes operating at the same time to do similar injury to the plaintiffs. (Gould on Waters, sec. 211 c; *People* v. *Gold Run etc. Co.*, 66 Cal. 150; 56 Am. Rep. 80; *Doud* v. *Guthrie*, 11 Ill. App. 194; *Monmouth* v. *Gardiner*, 35 Me. 247; *Phillips* v. *Phillips*, 34 N. J. L. 208; *Woodyear* v. *Schaefer*, 57 Md. 9; 40 Am. Rep. 419; *Crossley* v. *Lightowler*, L. R. 3 Eq. Cas. 279, 289; *Chipman* v. *Palmer*, 77 N. Y. 51; 33 Am. Rep. 566.)

*A. P. Catlin*, and *J. B. Hall*, for Respondents.

The complaint is insufficient because not showing irreparable injury, or any ground for appeal to equity.

(*Parker* v. *Winnipiseogee Company*, 2 Black, 545; *Goodall* v. *Crofton*, 33 Ohio St. 271; *Green* v. *Lake*, 54 Miss. 549; 28 Am. Rep. 378; *Lux* v. *Haggin*, 69 Cal. 274; *Atchison* v. *Paterson*, 20 Wall. 507.)    Plaintiff has a remedy at law. (Code Civ. Proc., sec. 526; *Leach* v. *Day*, 27 Cal. 643; Civ. Code, sec. 3422, 3423.)    Defendant has an equitable easement.    (Washburn on Easements, 97; *Hubbell* v. *Warren*, 8 Allen, 173; Bigelow on Estoppel, 433; Civ. Code, sec. 3515; *Cork* v. *Pridgen*, 45 Ga. 331.)    The damage was too small to be considered in determining the question of nuisance.    (*Davidson* v. *Devine*, 70 Cal. 519.)

McFARLAND, J.—On hearing in Bank.

This is an action for damages for an alleged nuisance, and for a mandatory injunction to prevent its continuance.    The nuisance or nuisances charged consist in this: Northeast of plaintiffs' lands there is a stream or slough called Stone Slough or Bear River, and between that stream and plaintiffs' lands there are other (smaller) natural sloughs.    Stone Slough and the other said sloughs run in a southwesterly direction.    Stone Slough, at a point about three miles from plaintiffs' lands, is tapped by a canal, constructed by defendant Christian and others, which carries its waters westerly to and across the said other sloughs, in which obstructions were placed by defendants in order that the water might be prevented from flowing down the sloughs, and forced to follow the canal.    It is averred in the complaint that if the said obstructions were not placed in the said sloughs, the water brought there by the canal would flow naturally down the sloughs and away from plaintiffs' land; and that by reason of said obstructions and canal the water was caused to flow on to plaintiffs' land, to their great injury.    Plaintiffs also aver that they (plaintiffs) put an embankment across said canal at a point on a road called the Davis road, which was sufficient to protect their land

from said water, and that defendants wrongfully entered upon said embankment and removed it, and thus allowed said water to run on their land, to their damage, etc. At the trial some issues were presented to and passed upon by a jury. These findings were adopted by the court. Other findings were then made by the court, and judgment was given for defendants. Plaintiffs appeal from the judgment, and from an order denying their motion for a new trial.

The cause was heard here in Department Two, and an opinion was delivered affirming the judgment. We adopt that opinion so far as it determines that the complaint was sufficient, and that the alleged acquiescence of plaintiffs' grantor, Yolland, did not constitute a defense to plaintiffs' cause of action for an injunction. The action was not barred by the statute of limitations. But upon a more thorough consideration of the case, after argument on rehearing, we are satisfied that the findings are fatally conflicting and contradictory, that they do not support the judgment, and that in a material respect they are not supported by the evidence.

The action was commenced in August, 1878; and the first main damage to plaintiffs' land by the said alleged turning of the water upon it is averred to have taken place in January and February of that year. There is no doubt that in those months a very large quantity of water was caused, by said acts of defendants, to flow upon plaintiffs' land. It happened, however, that at that time, owing to unusual floods, other large quantities of water also flowed upon plaintiffs' land from natural sources; and this coincidence seems to have been the cause of much of the confusion and conflict which appear in the findings of the court and the answers of the jury to the issues presented to them. It seems to have been thought that, as the water which flooded the land from other sources would probably, or certainly, have caused the damage averred in the complaint, if the water caused to

flow there by the acts of defendants had not been mingled with it, therefore the latter should not be considered as having added much to the injury. (It may be remarked, however, that it is difficult to find the principle upon which damage done by commingled water, coming from two sources, can be attributed to one of the original sources rather than the other.)

The thirteenth finding of the court is as follows: "That the said obstruction in the natural sloughs is not an obstruction to the free use of plaintiffs' property, and does not interfere with the enjoyment thereof, and that the removal of said embankment across said canal in the Davis road does not prevent said plaintiffs from the free use and enjoyment of their said property."

But in the tenth finding the court finds "that none of the waters diverted by the canal would have flowed upon the plaintiffs' land, if allowed, without interruption, to take their natural southwest course and direction to the river; and the embankment on the south side of the canal, on Christian's and other lands, *cause* waters to flow upon plaintiffs' land which would not flow there if the embankments were removed." In the eighth finding it is found that in 1878 some of the waters of Stone Slough flowed through the canal onto plaintiffs' land.

The jury, whose findings were adopted by the court, found, among other things, as follows:—

"7. Q.—What is the natural direction of the waters of Stone and the other sloughs east of the road, as they flow to the river?  A.—Southwest.

"8. Q.—Would any of the waters which are diverted by the canal flow upon plaintiffs' land if allowed, without interruption, to take their natural courses to the river?  A.—No.

"9. Q.—Do any of the waters diverted by the canal flow upon the lands of plaintiffs?  A.—Yes.

"13. Q.—Were the waters diverted by the canal in 1878 the *predominant* and proximate cause of damages

sustained by the plaintiffs from the water in 1877 and 1878? A.—No.

"14. Q.—Did other waters or other causes other than the waters of the canal materially contribute as causes of the damages claimed by plaintiffs? A.—Yes.

"15. Q.—If the jury answer Yes to the last question, and find that the damages claimed by plaintiffs were caused by the joint action of waters from the canal and waters from other sources, then the jury will answer, if possible, how much damage was caused by the waters of the canal. A.—One dollar.

"18. Q.—Do the embankments on the south side of the ditch on Christian's and other lands east of the road cause any waters to flow upon plaintiffs' lands which would not flow there if the embankments were removed? A.—Yes."

The court also found (finding 9) that plaintiffs were not damaged by the said acts of defendants "to any extent greater than in the sum of one dollar."

It is apparent, we think, that the findings above quoted are inconsistent and contradictory; and that the contradiction thus presented is not merely formal and about things not essential,—such as frequently creeps into findings inadvertently. The contradiction is, in our opinion, important, material, and fatal to the judgment. For instance, how can the thirteenth finding (upon which the judgment rests), that the results of the acts of defendants are "not an obstruction to the free use of plaintiffs' property," and do "not interfere with the enjoyment thereof," etc., be reconciled with the other findings? And how can it stand if the other findings be true? In the other findings it is declared that the natural course of the sloughs east of plaintiffs' lands is to the southwest; that none of the waters of said sloughs, diverted by the canal, would flow upon said lands if allowed to take their natural courses to the river; that the waters diverted by the canal *do flow* upon said lands;

and that the embankments on the south side of the canal *do* cause waters to flow upon plaintiffs' lands "which would not flow there if the embankments were removed." These findings cannot be true if it be also true that there was no interference with the "free use and enjoyment" of plaintiffs' property. There can be no more marked interference with a man's free enjoyment of his property than to wrongfully cause water to flow onto his land which would not flow there naturally. And how can we take one of these findings as true, and disregard others which are directly contradictory of it? The rule on this subject may safely be said to go this far, at least, — that where there are contradictory findings about matters material to the merits of the case, and the determination of which, one way or the other, is essential to the correctness of the judgment, there the judgment cannot stand. If one part of the contradictory findings would support the judgment, and another part would *necessarily* upset it, then the judgment must be reversed. (*Kerns* v. *McKean,* 65 Cal. 411; *Randall* v. *Hunter,* 66 Cal. 512; *Gilman* v. *Curtis,* 66 Cal. 116; *Sloss* v. *Allman,* 64 Cal. 47; *Richards* v. *Dower,* 64 Cal. 62; *Carman* v. *Ross,* 64 Cal. 249; *Reese* v. *Corcoran,* 52 Cal. 495.)

The finding that the damage done to plaintiffs' land *in* 1878 by the water which defendants caused to flow there was only one dollar, does not affect the merits of the case. In the first place, we do not see how that finding can be held to be supported by the evidence. It clearly appears in the evidence that at that time plaintiffs were largely and seriously damaged by water flowing onto and over their land, and that a very large part of that water was caused to flow there by the acts of defendants. It is true that when the damage was done *at that time,* the water from the canal was mingled with water from other sources, which (it may be admitted) was of a larger volume than that of the water brought

there by defendants; and it may have been difficult to separate the mingled elements of mischief, and calculate with any great exactness the proportionate amount of damage done by each. But surely there was no warrant for finding that all the damage was done by the other water, and none (practically) by the water poured onto plaintiffs' land by the canal. A wrong-doer who contributes to a damage cannot escape entirely because his proportional contribution to the result cannot be accurately measured. (In a case like the one at bar, it would be at least as near justice to hold him for all the damage as to hold him for none.) And we think the evidence did not warrant the finding that the damage caused by the acts of defendants was to the extent only of one dollar.

But the amount of the damage, estimated in money, was immaterial. That finding was only as to the damage done in 1878, when there was water on the land from other sources. The findings show that the waters diverted by the canal "flow" upon plaintiffs' land, which would not flow there if allowed to take their natural course; and that the embankments erected by defendants "cause" such artificial flowing. And to thus wrongfully cause water to flow upon another's land which would not flow there naturally is to create a nuisance *per se.* It is an injury to the *right*, and it cannot be continued because other persons (whether jurors or not) might have a low estimate of the damage which it causes. And especially is this so when the continuance of the wrongful act might ripen into a right in the nature of an easement or servitude. (*Richards* v. *Dower*, 64 Cal. 64, and cases there cited: *Tootle* v. *Clifton*, 22 Ohio St. 247; 10 Am. Rep. 732; *Casebeer* v. *Mowry*, 55 Pa. St. 419; 93 Am. Dec. 766; Wood on Nuisances, 2d ed., p. 639.) The right to an injunction, therefore, in such a case does not depend upon the extent of the damage measured by a money standard; the maxim, *De minimis*, etc., does not

apply. The main object of the action is to declare a nuisance, and to prevent the continuance by a mandatory injunction.

There is nothing in the point that with respect to the removal of the embankment across the canal, the defendants are not maintaining or keeping it up. "It is an injury which keeps itself up."

Our opinion therefore is, that for the reasons above given the judgment should be reversed.

Judgment and order appealed from reversed, and cause remanded for a new trial.

WORKS, J., SHARPSTEIN, J., and BEATTY, C. J., concurred.

PATERSON, J., did not participate in the decision of this above cause.

THORNTON, J., dissenting. — I dissent from the conclusion reached in the foregoing opinion, and from the opinion, except that portion of it which agrees with the opinion formerly drawn up by me in this cause. I see no cause to change the views expressed by me in the opinion just referred to, and adopt it as my opinion herein.

I will add, that in my view the contradictory findings referred to in the opinion of Justice McFarland relate to matters which are not material to a proper decision of the cause.

The following is the opinion of Department Two, rendered on the 28th of June, 1888, and adopted in part by the court in Bank: —

THORNTON, J. — This action was brought to recover damage alleged to have been caused by defendants to plaintiffs' grain crops, and for the abatement of nuisances averred to have been produced and maintained by defendants.

The plaintiffs aver in their complaint that they are the owners of certain lands situate in the county of San Joaquin (describing them), and that there is to the northeast of these lands a stream or slough known as Stone Slough or Bear Creek, which carries in the rainy season a large body of water running in a southwesterly direction; that this stream, at a point easterly from said land, connects with a canal or ditch which was constructed by defendant Christian and others; that the canal carries the waters of Stone Slough or Bear Creek in a westerly direction to certain natural sloughs on the south side of the canal, which are of sufficient size, if unobstructed, to take and carry the waters running down this canal off and away from the lands of plaintiffs, or that this canal runs past and by the natural sloughs above mentioned westerly to a point known as the Davis road, at which place there was, on April, 1876, thrown across the canal a levee or embankment in part built by the plaintiffs, and was sufficient to protect all of plaintiffs' lands described in the complaint from overflow by the waters of Stone Slough or Bear Creek, and did protect them until it was cut away, and the natural sloughs aforementioned connecting with the canal were obstructed by the acts of defendants.

It is then averred that the defendants, without right and against the protest of plaintiffs, cut away the embankment, and filled up and obstructed the sloughs above mentioned on the south side of the canal. In consequence of the removal of the embankment and the obstruction put in in the months of January and February, 1878, the waters of Stone Slough came down the canal, flowed over and submerged plaintiffs' lands, remained there a long space of time, and completely drowned out, rotted, and destroyed the grain growing on the lands, and otherwise injured them.

It is further averred that the obstructions above referred to were kept up and maintained by defendants,

and that the embankment was never rebuilt after its destruction.

It is further averred that the obstructions above referred to, so kept up and maintained by defendants, in the natural sloughs mentioned, are an obstruction to the free use and enjoyment of plaintiffs' property, and are a nuisance; that the removal of the embankment prevents plaintiffs from the free use and enjoyment of their property, and is a nuisance.

The findings of the court cover all the issues, and as a conclusion of law the court holds that the matters complained of were not nuisances, and rendered judgment for defendants.

It is urged now on behalf of respondents, that the judgment ought not to be disturbed, for the reason that the demurrer to the complaint should have been sustained. It is said that the suit is a bill in equity to abate the alleged nuisances by mandatory injunction, to which the statute (Code Civ. Proc., sec. 731) annexes as an incident the right to recover damages; and that the matters averred in the complaint are not sufficient to show a right in the plaintiffs to resort to a court of equity for relief.

Without entering into the particular reasons urged by respondents why the demurrer should have been sustained, we think it enough to say that in our opinion this question was determined adversely to their contention when this cause was here on a former appeal. (See 67 Cal. 41.) It was there held that this was a case in equity. This conclusion could not have been reached without holding the facts averred in the complaint to have been sufficient to give a court of equity jurisdiction; and where, on an appeal to this court, the judgment announced could not have been rendered without expressly or impliedly deciding the questions presented on a second appeal, the judgment will be conclusive, and such questions will not be again considered. (*Forgerson* v. *Smith,*

104 Ind. 246.)   The conclusion thus reached constitutes the law of the case in all its stages.

It is contended by appellants that the findings do not support the judgment.

The court found that the obstruction in the natural sloughs is not an obstruction to the free use of plaintiffs' property, and does not interfere with the enjoyment thereof; and that the removal of the embankment across the canal in the Davis road did not prevent the free use and enjoyment by plaintiffs of their property.   It also found, as conclusions of law, that the acts complained of are not *nuisances*.

The principal question in the case is, whether the facts found show any nuisance done, committed, or maintained by the defendants.

The following facts are found: That in the month of April, 1876, the plaintiffs filled the canal with the embankment mentioned, — which was in the following December cut away and removed by the defendants; that the defendant Christian, long prior to December, 1876, obstructed the natural sloughs on the south side of the canal, and maintained and kept them in place until the commencement of this action; that the embankment in the canal at the Davis road did not protect, and would not have protected if it had remained in place, all or any part cf lands of plaintiffs from overflow by the waters of Stone Slough in the months of January or February, 1878, and it would not have protected such lands from overflow from these waters, although the obstruction to the natural sloughs to the east of the embankment on Christian's land had not existed during the months aforesaid.

It is further found that in the months of January and February, 1878, some of the waters of Stone Slough reached the head of the canal at its junction with the slough (referring to the slough on the south side of the canal), and a part of those waters flowed down the canal,

and of the waters so flowing down, a part flowed upon the lands of the plaintiffs; that in the months aforesaid the lands of the plaintiffs were submerged, but the waters of Stone Slough, which at that time came down said canal, did not materially contribute to said submersion, or materially contribute to the injury, damage, and loss which the plaintiffs and their property sustained by reason of this submersion, and the plaintiffs were not damaged by the waters then diverted by this canal in any way or manner stated in the complaint, or to any extent greater than the sum of one dollar; that none of the waters diverted by the canal would have flowed upon the plaintiffs' lands if allowed without interruption to take their natural southwest course to the river, and the embankments on the south side of the canal on Christian's and other lands cause waters to flow upon plaintiffs' lands which would not flow there if the embankments were removed; that except to the immaterial extent stated above, the overflow of the lands of plaintiffs in January and February, 1878, and the damage therefrom, were caused by waters which did not come down the canal, but which came from other sources, and were the predominant and proximate cause of said overflow, and the damage sustained by plaintiffs at the time; that at the commencement of this action the obstruction in the natural sloughs mentioned above was not maintained or kept up by the defendants Castle and Williams, or either of them.

We conclude from the facts found as above that the removal of the embankment across the canal did not prevent the plaintiffs from the free use and enjoyment of their property; as the court below came to the conclusion and found that this embankment did not protect, and would not have protected if it had remained in place, all or any part of the lands of plaintiffs from overflow in January or February, 1878, and it would have afforded no protection from overflow, though there had

been at that time no obstructions to the sloughs on Christian's lands. We cannot perceive how its removal prevented the free use and enjoyment by the plaintiffs of their property.

The facts found do, in our opinion, sustain the conclusion that the removal of the embankment was not and produced no nuisance.

As to the obstructions to the sloughs on Christian's land, it appears, as set forth above, that some of the waters which came down the canal did contribute to the submersion of the lands of plaintiffs; that obstructions or embankments to the sloughs erected by Christian on the south side of the canal, with other embankments on other lands, did cause water to flow upon plaintiffs' lands which would not flow there if the embankments were removed; and that none of the waters diverted by the canal would have flowed on plaintiffs' lands if allowed without interruption to take their natural southwest course to the river. The court does also find that the water which came from Stone Slough through the canal did not materially contribute to the submersion, or materially contribute to the damage or loss to plaintiffs' property sustained by the submersion, and that plaintiffs were not damaged by the waters diverted in any manner stated in the complaint, or to any extent greater than in the sum of one dollar.

There is, in fact, no finding that the land has been damaged within the issue made by the complaint at all. The damage is plainly negatived in the finding that plaintiffs were not damaged in any way or manner stated in the complaint.

The finding of one dollar damage we regard as something outside of the case. The court having already disposed of the issue of damage raised by the pleadings, and having held that there was no such damage, anything additional on such issue must be looked on as something outside of it, and therefore to be disregarded.

Or, if we regard it as a finding that the land was damaged to the extent of one dollar, it must be that the court below looked on it as a damage resulting from unforeseen causes, as from an extraordinary flood which could not be anticipated, for which there would be no responsibility by Christian,—at any rate, no such responsibility as would render him liable to an injunction.

For the foregoing reasons, we cannot concur in the contention that the judgment is not supported by the findings.

The court is of opinion that the acquiescence of Yolland did not constitute a defense to the action of plaintiffs for an injunction, if they were otherwise entitled to one, and that the findings as to such acquiescence, in the view this court takes of the cause, are immaterial.

On an examination of the evidence, the court is of opinion that the findings are justified by it.

The judgment and order must be affirmed.

So ordered.

McFARLAND, J., and SHARPSTEIN, J., concurred.