[L. A. No. 1300.   Department One.—January 4, 1905.]

## BENJAMIN F. ALLEN, Respondent, v. SHERIDAN A. STOWELL, HENRY O. MACE, and H. C. MACE, Appellants.

NUISANCE—DAM CAUSING INJURY TO LAND—DESTRUCTION OF ORANGE-TREES—MANDATORY INJUNCTION.—A dam erected by the defendant which caused the waters of a stream to flow out of their natural channel, and to flow over the plaintiff's land, causing irreparable injury thereto by the excavation of deep gulches therein, and the destruction of orange-trees growing thereon, is a nuisance *per se*, which may be abated by a mandatory injunction compelling the defendants to remove so much of the dam as caused the injury.

ID.—USE OF MANDATORY INJUNCTION.—A trespass irreparable in its character and of a continuing nature, or a nuisance, may be restrained by a mandatory injunction, thus restoring things to their original condition. The right to a mandatory injunction does not depend upon the settlement of the rights of the parties at law, nor, if there be a legal injury caused by a nuisance, upon the extent of the damage caused thereby measured by a money standard. The principles upon which mandatory and prohibitory injunctions are granted do not materially differ. The courts are perhaps more reluctant to interpose the mandatory writ, but in a proper case it is never denied.

ID.—LOCATION OF RAILROAD CULVERTS—MISTAKE OF RAILROAD COMPANY—DEFENDANTS NOT JUSTIFIED.—The defendants had no right to build the obstruction to plaintiff's injury for the purpose of correcting a mistake of a railroad company in locating its culverts. Whatever was the effect on plaintiff's land from the defective condition of the railroad, or the location of its culverts, defendants cannot justify or defend their acts on the ground that they were endeavoring to obviate the mistakes of the railroad company and failed, it appearing that their dam was the cause of the injury to plaintiff's land.

APPEAL from a judgment of the Superior Court of Los Angeles County.   M. T. Allen, Judge.

The facts are stated in the opinion.

Frank Burnett, for Appellants.

James Burdett, for Respondent.

CHIPMAN, C.—Defendants appeal from a judgment for plaintiff granting a mandatory injunction compelling defendants to remove certain dams erected by defendants which caused the flow of water to be diverted from its natural course onto plaintiff's land. The bill of exceptions does not pretend to bring up all the evidence, but, as stated in appellants' brief, "is intended only to present two questions of law adopted by the court and applied to the case." These questions are: 1. Will the remedy of mandatory injunction lie where the evidence is conflicting on the point at issue, unless there first be a verdict of a jury or decision of the court finding that actual—at least nominal—damages have been awarded plaintiff? 2. Did the court err in its ruling that defendants had no right to build the obstruction for the purpose of correcting a mistake of the railroad company in locating its culverts? It appears from the findings of the court that plaintiff's land is planted to orange-trees in full bearing. Prior to the commencement of the action, and when defendants commenced the construction of the dams complained of, "plaintiff demanded of them that they desist and cease from said work and protested against the construction thereof, and explained to them the nature of the damages that said dams would cause him and his said lands and orchards, but defendants refused to abandon said work, or to cease the construction of said dams, and continued the same to completion." It appears from the bill of exceptions, and is substantially found as the facts by the court also, that the evidence of plaintiff tended to show that the dams referred to, which were erected after the railroad company had built its track, were so constructed that "all water flowing down said ancient way . . . would be diverted by said dams from its natural course and caused to flow in one accumulated body southerly along the east of these dams through said railroad culverts and thence in a like body through the lands of S. A. Stowell to the northeasterly corner of plaintiff's land, and would then flow in said accumulated volume with great force southwesterly and diagonally across plaintiff's lands, the natural effect of which would be to destroy a great number of his trees growing upon said land, and to excavate deep gulches and watercourses diagonally through the same; that the construction of said dams would and did arrest and divert water and cause the same to flow upon the

lands of plaintiff as last above found which would not natur-
ally flow there in times of flood and high water''; and this
the court found ''would cause him [plaintiff] and his said
land and orchard great and irreparable injury and damage.''

There was a certain part of the dams and wing-dam erected
by defendants which the court ''in the absence of results from
actual experience'' was unwilling to order removed on the
evidence then before it, but found certain other portions to
be a nuisance, ''and should be removed and leveled to the
original and natural surface of the ground.''

Relief by injunction will be given to prevent a deprivation
of ancient rights; and if it be shown that plaintiff's house is
by the obstruction which he seeks to enjoin rendered in a sub-
stantial degree less fit for purposes of occupation than before,
''equity may interfere, even to the extent of making its in-
junction mandatory by directing the restoration of matters
to the condition in which they were before defendant's erec-
tion was begun.'' (High on Injunction, sec. 860.) A trespass
irreparable in its character and of a continuing nature may
be restrained by a mandatory injunction, thus restoring things
to their original condition; health officers may be restrained
by mandatory injunction from allowing a sewer to remain
open. (Id., sec. 708.) Trespass upon public lands may be
enjoined by the United States, and the injunction be made
mandatory to compel the defendant to remove obstructions
such as fences (Id., 723a); and in a case of a nuisance to a
dwelling-house, the injunction will be made mandatory if the
circumstances of the case require it. (Id., sec. 792.)

It has been held that a bill to enjoin the erection of a nui-
sance in close proximity to plaintiff's buildings which contains
allegations of irreparable injury to complainant is not de-
murrable because it fails to show that the rights of the parties
have been settled at law. (High on Injunction, sec. 791.)

This court said in *Learned* v. *Castle*, 78 Cal. 454, that the
right to an injunction in a case like the present one ''does not
depend upon the extent of the damage measured by a money
standard; the maxim *De minimis*, etc., does not apply. The
main object is to declare a nuisance and to prevent the con-
tinuance by a mandatory injunction.'' The court found that
the waters, diverted upon plaintiff's land by the dam erected
by defendant would not flow there if allowed to take their

natural course. To thus wrongfully cause water to flow upon another's land which would not flow there naturally is to create a nuisance *per se.* "It is an injury to the *right,* and it cannot be continued because other persons (whether jurors or not) might have a low estimate of the damage which it causes." (*Learned* v. *Castle,* 78 Cal. 454.) Mr. Wood says: "Every such act is an invasion of another's right, and is actionable because of the injury to the right, whether the damage be great or small. Indeed, the act is wrongful *per se* and in its inception, and is actionable without any special damage." (Wood on Nuisance, sec. 376. See, also, sec. 782.) An obvious distinction between *injury* and *damage,* not always observed in dealing with the question before us, is clearly pointed out by Mr. Wood. (Id., sec. 783.) Speaking of a man's right of dominion over his property and the jealous care with which courts have guarded this sacred right, the author says: "Whatever invades this right is a *legal* injury, whether damage ensues or not. It is a *right,* for the violation of which the law 'imports damage to support it,' and courts of equity have *always* interposed, in a proper case, to protect the right, without any reference to the question of *actual* damage, the motive  which instigated the party to invoke its aid, or the benefits that he derives from the act." (Id.) (Italics the author's.)

The principles upon which mandatory and prohibitory injunctions are granted do not materially differ. The courts are perhaps more reluctant to interpose the mandatory writ, but in a proper case it is never denied. It was said in *Johnson* v. *Superior Court,* 65 Cal. 567: "The jurisdiction of the court to grant a preliminary injunction restraining the defendants from interfering with the flow of water pending the litigation cannot be doubted, and we cannot see that its jurisdiction is exceeded when it requires the removal of the means by which the diversion is made. The ultimate aim of the injunction is the undisturbed flow of the water. The objections to the removal of the means by which the diversion is made are no more cogent than the objections to preventing the diversion of the water itself." As the court has jurisdiction, the only question is, Has it properly exercised its jurisdiction? We need not pursue the subject further. On the showing made in the bill of exceptions it clearly appears that

"the construction of said dams [by defendants] would and did arrest and divert water and cause the same to flow upon the lands of plaintiff as last above found, which would not naturally flow through in times of flood and high water"; and by the finding of the court, presumably on sufficient evidence, the effect of these dams in so diverting the water would be to "destroy a great number of his [plaintiff's] trees growing upon said lands, and would excavate deep gulches and watercourses diagonally through plaintiff's land," rendering a considerable portion of it and the orchards thereon useless, and cause plaintiff and the said land irreparable injury. This was quite sufficient, in our opinion, to warrant the court in granting the relief given by the judgment. (*Rudel* v. *Los Angeles County,* 118 Cal. 281.)

. The second point may be briefly disposed of. Whatever was the effect on plaintiff's land from any defective construction of the railroad company's roadway, or locations of its culverts, defendants cannot justify or defend their acts on the ground that they were endeavoring to obviate the mistakes of the railroad company and failed. Conceding their right to go on their own land for this purpose, the fact remains, as found by the court, that it was defendants' dams that were the cause of the injury. The dams did not merely reinstate natural conditions; they created new conditions. What the court stated it would have held had the facts been otherwise is immaterial and presents no question now for review.

We advise that the judgment be affirmed.

Gray, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed.    .Van Dyke, J., Angellotti, J., Shaw, J.