WAUBAY MOTOR SALES COMPANY, Respondent, v. LA-
SELL et al., Appellants.

(143 N. W. 272.)

1. **Injunctions—Mandatory Injunction—Waters—Supply to Private
Consumers.**

Under Code Civ. Proc., Sec. 197, providing for an injunction
to restrain, among other acts, the continuance of an act the
commission or continuance of which would be injurious, an
injunction to restrain the board of trustees of a town from
interfering with the water supply of an electric light plant,
which had been shut off by the marshal, may properly require
the trustees to cause the water to flow through the pipes of
the town in the same manner as it did before it was shut off.

2. **Same—Mandatory Injunction—Water Supply—Omission of Acts
Commanded.**

Under such an order the trustees could not remain inactive,
but should have immediately ascertained the conditions relative
to the water mains, and taken steps to restore the flow of
water.

(Opinion filed October 6, 1913.)

Appeal from Circuit Court, Day County. Hon. FRANK Mc-
NULTY, Judge.

Action by the Waubay Motor Sales Company against G. G.
Lasell and others as trustees of the town of Waubay, to enjoin
obstruction of the flow of certain water through town water pipes,
etc. From a judgment of the trial court finding defendants guilty
of contempt of court in disobeying a temporary injunction in the
pending action, defendants appeal. Affirmed.

*George S. Rix,* and *Campbell & Walton,* for Appellants.

The function of a writ of injunction is to afford preventative
relief; it is powerless to correct wrongs that are already com-
mitted. City of Alma v. Loehr, (Kan.) 22 Pac. 424; Wabaska El.
Co. v. City of Wymore, (Neb.) 82 N. W. 626; Rossiter v. Etna
Life Insurance Co., (Wis.) 71 N. W. 898; Wallace v. Helena Ele.
R. R. Co., 25 Pac. 278-281; Kahn v. Old Tel. Mining Co., 2
Utah, 13; Wangelin v. Goe, 50 Ill. 459; Mammoth Vein Company's
appeal, 67 Pa. St. 183; I. High on Injunctions, p. 8.

There was nothing in the order specifying which particular
pipe was meant. If it was intended that the defendants should
open up the north pipe this pipe should have been designated
and described. The water had been flowing through the south

pipe and had been used by the plaintiff since the 6th of July, and the north pipe had been discontinued since that time. The defendants knew that they had not interfered with the south pipe, and that the water was flowing through that pipe as it had been prior to the 11th day of September, and took the order to mean that they should not interfere with the water in that pipe. Under the unquestioned evidence they did nothing to interfere, and the water continued to flow through said pipe from said main into the electric light plant of the plaintiff in the same manner as it did prior to the 11th day of September and from the 6th day of July, 1912.

From the authorities quoted heretofore, and the purpose of an injunctional order as contemplated by our statute, it becomes merely an order prohibiting the defendants from doing or permitting certain things to be done.

Any affirmative commands to undo acts already done are beyond the purview of statute and of the injunctional order, and are void.

The only possible part of the order which the defendants could have violated, as the evidence stands, is the part commanding them to cause the water to flow. If the defendants disobeyed this part of the order, which we say under the law is void, they should not be guilty of contempt. Gardner v. Ross et al., 19 S. D. 497.

The judgment of the circuit court should be reversed; because the evidence fails to disclose any willful or intentional disobedience of the order by any of the defendants, and on the other hand clearly shows that they were trying to obey the order of the court; because the undisputed evidence shows that the defendants desisted after the service of said order from doing anything which would in any manner interfere with said water pipes; and that there is an utter lack of evidence to show the necessary willfulness on the part of the defendants.

The incident of the handbills is not material and should not receive any great consideration, coming as it did six days after the order was served, and being issued for the purpose of protecting the mains.

*Anderson & Waddell,* for Respondents.

GATES, J.   Prior to September 1, 1912, respondent owned a building in Waubay, S. D., in one department of which it op-

erated an electric light plant, and in the other part conducted an automobile business. From the town water mains there ran two service pipes, the north pipe into the electric light plant, and the south pipe into the garage. Prior to July 1, 1912, the town authorities directed that meters should be placed on all service pipes. Respondent placed one on the south pipe. On July 6, 1912, the north pipe was shut off by direction of the town officials for failure of respondent to attach a meter. Prior to that time water had flowed through both pipes. It is claimed by respondent that, as a part of its contract with the town, the town was to furnish free water to the electric light plant. After such shut-off, respondent cut a lead from the south pipe into the electric light department, and used water therefrom until some time in August, when respondent's secretary opened the north pipe, and used water therefrom for the electric light plant until about September 11, 1912, when it was shut off by the town marshal by direction of appellants. Respondent then brought this action to enjoin defendants, as trustees of the town of Waubay, "from preventing water from flowing through a certain pipe from the mains of said town of Waubay to be used for cooling the engine cylinders of certain gasoline engines used by it for the purpose of propelling dynamos" in its electric light plant. On September 13, 1912, the trial court issued a restraining order, which was served on appellants on the same day. The essential parts of said order are as follows: "It is ordered that the defendants, and each of them, together with their attorneys, agents, and servants, immediately be and they are hereby restrained and enjoined from in any manner obstructing the flow of water, or continuing an obstruction to the flow of water, through said pipe from the water mains of said town and into the electric light plant of the plaintiff company during the pendency of this action or until further order of the court, and that defendants immediately cause the water to flow through said pipe from said mains and into the electric light plant of plaintiff company in the manner as it did prior to the 11th day of September, 1912."

On September 17, 1912, the court, upon an affidavit showing disregard of the restraining order, issued an order requiring appellants to show cause why they should not be adjudged in contempt of court. On September 19, 1912, respondent's secretary

again opened up the north pipe. Appellants answered, testimony was taken, and the court on September 24, 1912, rendered a judgment thereon. The material parts of the judgment and of the facts therein recited are as follows: "That the defendants, after the service of said restraining order upon them, entirely ignored the same, and have failed, refused, and neglected to comply with the terms thereof, and did not, as directed by said restraining order, cease to maintain obstruction to the flow of water through the pipe leading from the water mains of said town into the electric light plant of plaintiff company, and that they failed and neglected to cause the water to flow through said pipe from said mains and into the electric light plant of plaintiff company in accordance with the command of said order, or at all. That in said pipe leading from the water mains of said town and into the electric light plant of plaintiff company the defendants maintained and permitted to be maintained an obstruction to the flow of water therethrough and into the electric light plant of plaintiff up to and until the 19th day of September, 1912, when said obstruction was removed by an officer of plaintiff company without the knowledge and consent of said defendants, or either of them. That thereafter, and prior to the hearing in this matter, the defendant printed and procured and caused to be printed and distributed broadcast in said town of Waubay, in a form which is commonly known as a dodger or handbill, the following: '50.00 Reward, for information leading to the arrest and conviction of the person or persons who tampered with the north water pipe cut-off leading into the Waubay Motor Sales Co.'s building on the night of September 19, 1912. Town of Waubay, by G. G. Lasell, George Kuhn, and F. J. Telschow, Board of Trustees.' That by reason of the facts aforesaid it is considered and adjudged that the defendants and each of them have willfully disregarded, disobeyed, and failed to comply with the said order of this court, and are guilty of contempt of court. And it is further ordered and adjudged that the defendants forthwith cause to be printed in the English language, over their signatures, a handbill or dodger in size at least equal to the one containing an offer of reward, and hereinbefore set out, stating in substance that said offer of reward was unwarranted, and is hereby retracted and recalled, and that the same be given as wide circulation and publicity as was given the said handbill

or dodger containing the said offer of reward." Then follows an extremely mild monetary punishment, which was in substance an award to respondents for its attorney's fees and expenses on the hearing.

The testimony of appellants tends to show that they were ignorant of the fact that water was for a time prior to September 11, 1912, running through the north pipe; but, on the other hand, it shows that they took no steps to ascertain the true condition of affairs, and failed utterly to comply with that part of the restraining order which required them to "immediately cause the water to flow through said pipe from said mains and into the electric light plant of plaintiff company (respondent) in the manner as it did prior to the 11th day of September, 1912." One of the appellants testified: "I did not know that the water was not flowing to the electric light plant. I did not try to find out." With the merits of the controversy between the parties, we have at present no concern nor can we consider the propriety of the conduct of respondent's secretary in tampering with the water main after it was shut off by town authority. The question before us is whether the court made a lawful order, and, if so, whether it was violated.

[1] The only point raised by appellants which merits consideration is as to the authority of the trial court to make the affirmative direction last above quoted in and as a part of the restraining order. It is urged by appellants that such direction was not properly a part of the restraining order, and was void, and therefore its disobedience was not a contempt of court; that injunction is not the proper remedy for undoing a thing already done. Section 197, C. C. P., authorizes the granting of an injunction not only to restrain the commission, but also the *continuance* of some act, the commission or *continuance* of which during the litigation would produce injury to the plaintiff. In Magpie Gold Min. Co. v. Sherman, 23 S. D. 232, 121 N. W. 770, 20 Ann. Cas. 595, this court said, "While mandatory injunctions are not favored by the courts, they are nevertheless permissible in certain special cases," citing High on Injunctions, § 358, and 22 Cyc. 742. In Lawrence v. Ewert, 21 S. D. 580, 114 N. W. 709, an injunction was sustained by this court which prohibited defendants from continuing the obstruction of a highway, and the ineffective-

ness of requiring applicant to pursue his remedy at law was therein discussed on page 586 of 21 S. D., page 709 of .117 N. W.   In Falcon v. Boyer, 142 N. W. 427, the Supreme Court of Iowa said: "It is next contended that the decree of the court is wrong in that it contained a mandatory order on the defendant.   Upon this point we have to say that, while the office of an injunction primarily is to restrain, and not to compel, the performance of an act, yet, if it be necessary in order to make the restraining order effectual, the party against whom it is issued may be required to perform some affirmative act which will make effectual the main and controlling purpose of the order.   It cannot be maintained that, because an injunction primarily is to restrain, and not to compel, the performance of an act, it cannot be used, when the effect of yielding obedience thereto requires the performance of some affirmative act.   That is, the court may grant an injunction, the essential nature of which is to restrain, although, in yielding obedience to the restraint, the party may be required to perform some affirmative act.   Otherwise often the injunction would be ineffectual"—citing Allen v. Stowell, 145 Cal. 666, 79 Pac. 371, 68 L. R. A. 223, 104 Am. St. Rep. 80, and Troe v. Larson, 84 Iowa, 649, 51 N. W. 179, 35 Am. St. Rep. 336.   We approve the reasoning of the Iowa court, and are clearly of the opinion that in the present case the effectual carrying out of the main purpose of the restraining order authorized and required the affirmative matter contained therein.

[2] We are also clearly of the opinion that appellants were not justified in sitting still and doing nothing upon the receipt of the order.   It was incumbent upon them to immediately ascertain the true facts in relation to the condition of the water main leading into the electric light plant.   It was incumbent upon them to immediately put that main in the condition in which it was prior to September 11, 1912.   The order was a lawful order; the appellants violated it, consequently they were properly adjudged in contempt of court.

Finding no error in the record, the judgment of the trial court is affirmed.