[Civ. No. 6376. Fourth Dist. Dec. 21, 1960.]

ROBERT A. HEIL et al., Respondents, v. HENRY YUKINAS SAWADA et al., Appellants.

ROBERT A. HEIL et al., Respondents, v. LOWELL INVESTMENT COMPANY (a Corporation) et al., Appellants.

Martin B. Weinberg and Tetsujiro Nakamura for Appellants.

Miller, Nisson, Kogler & Wenke and William F. Wenke for Respondents.

GRIFFIN, P. J.—These cases, seeking mandatory injunction, were consolidated for trial and by stipulation jointly appealed. They involve a judgment of the trial court in each case, enjoining and restraining defendants from diverting or altering the natural flow of surface waters through a certain drainage ditch which conveys water onto plaintiffs' land, and ordering defendants to refill said ditch and restore the property to its former status.

There is little if any dispute as to the facts. The parties to the action own and lease several parcels of property east of Highway 39 in the vicinity of Smeltzer Avenue in Orange County. Plaintiffs own 80 acres of land south of the 40-acre tract of land owned by defendants Sawada, which is in turn south of a 68-acre subdivision owned by defendant Lowell Investment Company, Inc. Plaintiffs farm the land they own as well as land north and east of this parcel which they lease. Upon plaintiffs' leased property, east of Newland Avenue in the vicinity of Smeltzer Avenue, there is a low spot referred to as a peat hole. This low spot is farmed and is not waste land. The Sawadas bought their 40-acre parcel on October 21, 1958, and they permitted Lowell Investment Company to construct a ditch along the northern and western edges of the Sawada property. This ditch collects water falling on the subdivision and water flowing from lawn-watering, car-washing, et cetera, and conveys it to Smeltzer Avenue. At this point the water flows down the curbed gutter of Smeltzer Avenue to the easterly low spot. In case of a heavy runoff, the water in the ditch is apt to run across the crown of Smeltzer Avenue onto plaintiffs' owned property. Prior to the construction of this ditch, water flowing on the sub-

division land and the Sawada property ran off in a south-westerly and northerly direction.

Plaintiffs brought out that one C. W. Worthy previously owned both the Sawada property and the subdivision acreage. He sold 68 acres to Lowell Investment Company, hereinafter referred to as "Lowell," which corporation subdivided the land and built about 138 homes thereon. Before the board of supervisors would approve the subdivision map, they required a letter from Worthy to be filed with the county, stating that he would accept the drainage from the subdivision onto his land (the parcel now owned by the Sawadas). The subdivision was developed and sold. Worthy sold his remaining land to the Sawadas. The ditch was constructed upon the Sawada land by Lowell and the Sawadas then conveyed the land encompassing the ditch to Lowell. The defendants dug the ditch pursuant to a plan they drafted and submitted to the road department and which the road department approved.

Defendants contend that the evidence does not support the findings and judgment in that (1) before the construction of the ditch water did collect in the low spot; (2) since plaintiffs' leases ran until December 31, 1959, and December 31, 1960, they are not entitled to a permanent injunction to prevent water from accumulating on the leased property; (3) the homes in the subdivision will be inundated if the ditch is filled in; and under the balance of convenience doctrine and the doctrine of relative hardship, a reversal is compelled; (4) plaintiffs could be adequately compensated by money damages; at worst, there was a technical violation of plaintiffs' rights; and (5) since the ditch is now located on land owned by Lowell, the judgment ordering the Sawadas to refill the ditch compels them to commit a trespass.

As to defendants' first contention, there is evidence that a certain amount of water did collect, during heavy rainy seasons, on the low spot on plaintiffs' land, but this was greatly increased by diverting the runoff from the subdivision property through the drainage ditch rather than accepting "sheet flow" of drainage water from the subdivision upon and across the Sawadas' 40 acres as agreed to by the Sawadas' predecessor in interest, which would ordinarily absorb a great portion of it. Accordingly, there is substantial evidence of the fact that the owners of the upper land constructed a ditch to divert waters which would have naturally been absorbed on the upper lands or which flowed to the northwest or south

of said lands and not upon the land owned or leased by plaintiffs. ▪ In *Allen* v. *Stowell,* 145 Cal. 666, 669 [79 P. 371, 104 Am.St.Rep. 80, 68 L.R.A. N.S. 223], it is said:

"To thus wrongfully cause water to flow upon another's land which would not flow there naturally is to create a nuisance *per se.* 'It is an injury to the *right,* and it cannot be continued because other persons . . . might have a low estimate of the damage which it causes.' [Citation omitted.] . . . 'Every such act is an invasion of another's right, and is actionable because of the injury to the right, whether the damage be great or small. Indeed, the act is wrongful *per se* and in its inception, and is actionable without any special damage.' [Citation omitted.] . . . 'Whatever invades this right is a *legal* injury, whether damage ensues or not. It is a *right,* for the violation of which the law "imports damage to support it," and courts of equity have *always* interposed, in a proper case, to protect the right, without any reference to the question of *actual* damage, the motive which instigated the party to invoke its aid, or the benefits that he derives from the act.' " (See also *Galbraith* v. *Hopkins,* 159 Cal. 297 [113 P. 174]; *Switzer* v. *Yunt,* 5 Cal.App.2d 71 [41 P.2d 974]; *Andrew Jergens Co.* v. *City of Los Angeles,* 103 Cal. App.2d 232 [229 P.2d 475].)

▪ As to the second contention, in reference to the expiration of the leases, the testimony of plaintiffs is that future leasing of 25 acres depends upon the outcome of this case and the balance of the property under the lease will be re-leased. The flood surface waters from the ditch would also affect the property owned by plaintiffs. In this connection, it is further argued that plaintiffs, by their lack of action, did not want plaintiffs' use of the drainage ditch to ripen into a prescriptive right. These actions were filed on January 13 and January 26, 1959, respectively. There was a sufficient showing of present interest and authority to maintain the action. (*Sears* v. *Ackerman,* 138 Cal. 583 [72 P. 171]; Code Civ. Proc., § 385.)

▪ As to the third contention, the possibility that 138 houses might be inundated if the ditch is filled with dirt cannot be used as justification for flooding plaintiffs' property. Under the evidence, the claim of balance of convenience doctrine and the doctrine of relative hardship mentioned in *Wright* v. *Best,* 19 Cal.2d 368 [121 P.2d 702], would not necessarily apply or authorize a reversal of the judgment. It does not here appear that plaintiffs' right which they seek

to protect is merely a "technical" and "unsubstantial" right as contended by defendants. Plaintiffs' testimony was that even in the dry season the mere runoff from sprinkler systems in the subdivision filled the ditch with water and it ran down to the peat hole on plaintiffs' property, and that one rain in January 1959 caused water to accumulate on plaintiffs' leased land in large amounts and that excess water could flood crops already planted, delay planting, create erosion and carry weeds and grass seeds onto the flooded property if this drainage ditch is maintained.

The fourth contention that plaintiffs could be adequately compensated by money damage is not the determining factor. (*Allen* v. *Stowell, supra,* 145 Cal. 666, 669; *Rudel* v. *Los Angeles County,* 118 Cal. 281 [50 P. 400]; *Learned* v. *Castle,* 78 Cal. 454 [18 P. 872, 21 P. 11]; Wood on Nuisance, §§ 376 and 782.) The fact that defendants received the approval of drainage plans by governmental agencies does not entitle defendants to disregard the law regarding flow of surface waters. (*Andrew Jergens Co.* v. *City of Los Angeles, supra,* 103 Cal.App.2d 232.)

The fifth contention, in reference to refilling the ditch, is untenable. It was constructed by defendant Lowell partially on the property of defendants Sawada. The Sawadas bought the property subject to the right to drain these waters on it. The Sawadas could not avoid the order of the court by transferring title thereto to another defendant. In case of a contempt proceeding, which might involve the respective individual rights and duties of these defendants, the court could well determine the issue. In *Johnson* v. *Superior Court,* 65 Cal. 567 [4 P. 575], it is said (quoting from the syllabus):

"The jurisdiction of a court in granting a preliminary injunction against the diversion of the water of a stream is not exceeded when the order directs the removal of the means by which the diversion is made; and the refusal to comply with such an order subjects the defendant to punishment for contempt." (See also *Allen* v. *Stowell, supra,* 145 Cal. 666, 669.)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.