[No. 14895.   Department Two. — September 23, 1892.]

HENRY LORENZ ET AL., RESPONDENTS, *v.* JOHN
WALDRON, APPELLANT.

INJUNCTION — USE OF PROPERTY BY OWNER — POSSIBILITY OF INJURY. — A
mere possibility, or anything short of a reasonable probability, of injury
is insufficient to warrant an injunction against any proposed use of
property by its owner.

ID. — WATER-DITCH — RIGHT OF WAY — SUPPORT — MINING CLAIM —
TUNNEL BENEATH DITCH. — The owners of a water ditch constructed
along the side of a mountain on the public land of the United States
are entitled to the right of way for their ditch, with vertical and lateral
support, and cannot enjoin the locator of a mining claim from tunneling
into the side of the mountain, forty-six feet under the water ditch, where
the rights of the ditch-owners are not controverted, and no reasonable
probability appears that the ditch will be injured by the excavation;
nor can the ditch-owners question the locator's right to locate, possess,
and explore the land as mineral land, subject to their admitted right of
way.

MINING CLAIM — CHARACTER OF PUBLIC LAND — QUESTIONING RIGHT OF
LOCATION. — Where the public land has been located as a mining claim,
only the government of the United States, or persons claiming the lands
under the government as non-mineral land, can properly raise the ques-
tion whether the land was subject to be located as mineral land, or
whether it contains mineral of sufficient value to justify location or
exploration.

APPEAL from a judgment of the Superior Court of
Trinity County, and from an order denying a new trial.

The facts are stated in the opinion.

*John W. Turner*, for Appellant.

*James W. Bartlett*, for Respondents.

VANCLIEF, C. — Action to enjoin defendant from run-
ning a tunnel into the side of a mountain, under plain-
tiffs' water-ditch. The judgment was in favor of the
plaintiffs, awarding a perpetual injunction; and defend-
ant has appealed from the judgment, and from an order
denying his motion for a new trial.

The plaintiffs' ditch was constructed along the side
of a mountain, on the public land of the United States,
for mining purposes; and it is not questioned that,

under acts of Congress, plaintiffs had acquired the right of way for, and were entitled to maintain, their ditch as constructed.

The court found that on the thirtieth day of October, 1886, the defendant located a mining claim on the side of the mountain, extending across and below the plaintiffs' ditch; that for the purpose of prospecting this mining claim, the defendant had run a tunnel into the mountain, beneath plaintiffs' ditch, extending about fifty feet beyond a vertical plane drawn on the line of the ditch. The floor of this tunnel is thirty-five to forty feet, vertically, lower than the bottom of the ditch. At the back end of the tunnel the bed-rock inclined downwards, indicating, as defendant believed, the existence of a " back pay-channel," so low that it could not be mined through this tunnel, on account of water. He therefore abandoned it more than two years before the commencement of this action. The plaintiffs made no objection to the running of this tunnel before it was abandoned by defendant. Afterwards, defendant made several open cuts into the side of the mountain, below plaintiffs' ditch, from ten to twenty feet in length, for the purpose of prospecting his claim, to which no objection was made by plaintiffs while they were being made. How nearly any of these cuts approached the ditch does not appear. Having answered the purpose for which they were made, these open cuts were also abandoned. Afterwards, defendant commenced another tunnel, about three hundred feet, horizontally, from a vertical plane drawn on the line of the tunnel first above mentioned, and forty-eight feet four inches, vertically, lower than plaintiffs' ditch. After driving this lower tunnel in, very nearly horizontally, a distance of twenty-nine feet, this action was commenced, and defendant was enjoined from continuing it, *pendente lite;* and by the final judgment he was " *perpetually enjoined and restrained from digging or excavating any tunnel or tunnels under and beneath* " plaintiffs' ditch.

It was not alleged, nor found by the court, that plain-

tiffs' ditch had been injured, nor that plaintiffs had sustained any damage from any work done by defendant before the commencement of the action; and, of course, there is no judgment for damages. The sole object of the suit is to obtain a perpetual injunction against threatened future injuries to plaintiffs' ditch. The only threat or intention of the defendant which the evidence tended to prove was to drive his lower tunnel in the direction in which he had started it, to and beyond a point vertically beneath plaintiffs' ditch, for the purpose of tapping what he believed to be a "pay-channel" running through his mining claim.

The court found that "defendant is engaged in running tunnels, starting at a point about fifty feet below said ditch, and that he threatens to continue to run said tunnels beneath the bottom of said ditch; . . . . that if defendant is permitted to dig and excavate the above-named tunnels, great and irreparable injury will result to plaintiffs, for which pecuniary compensation would not afford adequate relief; . . . . that said second tunnel, if not properly constructed, would be dangerous to the safety of said ditch, and would cause the waters of said ditch to percolate through the roof of said tunnel, and thereby endanger its safety; . . . . that said ditch would be in danger of destruction if said tunnel is permitted to be constructed in the manner now pursued by defendant"; and that defendant is insolvent.

These findings, except the insolvency, are excepted to, on the ground that they are not justified by the evidence, and I think the exceptions are well taken, to the extent hereinafter defined.

1. There is no evidence tending to prove that defendant was "engaged in running tunnels," or more than one tunnel; nor did the evidence tend to prove that he threatened to "continue to run said tunnels," or any tunnel, except his lower tunnel, which, if continued in its course, will pass under plaintiffs' ditch at a point about forty-six feet vertically below it.

2. The finding that if defendant is permitted to con-

tinue the construction of his second (lower) tunnel, "said ditch would be in danger of destruction," construed to mean that there is a reasonable probability of the effect predicted, is not justified by the evidence.

Eight experienced miners, on the part of the defend. ant, testified that, in their opinion, the extension of the lower tunnel beyond a vertical line from the ditch would not injure the ditch, and also, that even the upper tunnel would never injure the ditch. As grounds for their opinion, they testified, among other things, that the earth in which the ditch was dug, and under it, was composed of clay and broken rocks; that the upper tunnel had stood more than two years without injury to the ditch; that there was still about twenty feet of solid ground between the upper tunnel and the ditch; that the upper tunnel was partly in bed-rock where it passed the ditch; and that the lower tunnel was partly in bed-rock at a distance of twenty-nine feet from its mouth.

Five witnesses, on the part of the plaintiffs, testified on this point, substantially, as follows:—

Mr. Johnson: "Where a ditch is passing over it (tunnel), it would be more apt to cave. . . . . In my opinion, as a miner, the effect of the running of *these tunnels* under the ditch, I think it would be an injury to the ditch. I think it would be likely to make it cave down, from the nature of the ground it was in. . . . . The effect of water percolating through ground of this character is to loosen it and cause it to cave; it also causes it to slide. . . . . The second tunnel is three hundred feet farther down stream.

"Q. Did that tend to weaken the bank at all, where the upper tunnel was? A. No, sir.

"Q. Did the upper tunnel tend to weaken the bank where the lower tunnel was? A. No, sir.

"Q. There could be no relative connection between the two with reference to the caving or sliding? A. No, sir.

"Q. Each one would have to occasion its own particu-

lar injury by weakening the bank?    A. Yes, sir; I think
so.

"Q. How could it cause a slide?    A. By caving down
from the roof.

"Q. That would be a mere possibility?    A. Yes, sir.

"Q. It might happen, or it might not?    A. It might
happen, or it might not.

"Q. Then this is a mere conjecture on your part, that
it would happen?    A. Certainly; because it has not hap-
pened yet.    That tunnel was run two years ago and over,
and we have had two very excessive seasons since then."

Mr. Day: "Q. What is the effect of running *a tunnel*
under the bottom of *a ditch?*    A. It has a bad effect if
it has water in it.    It will make it cave, — it will get soft,
and cave easier, from water. . . . . Saw water dripping
down from above in defendant's tunnel.    Could not say
where it came from."

This witness gave no opinion as to the effect of de-
fendant's tunnels on plaintiffs' ditch.

Mr. Hilliard: "Q. Now, describe to the court the ap-
pearance of those tunnels.    A. I should judge the ap-
pearance of those tunnels would be very bad, — that is,
they would be liable to cave, most any time.    It is not a
solid foundation.    It is a kind of a mountain slide, I
should judge, — broken-up rock, and clay mixed in.    I
saw water coming through the roof of these tunnels.

"Q. Do you know what the effect upon *a ditch* would
be of running tunnels under it?    A. Well, I should con-
sider it to have a very bad effect, — the water coming
through, and it not being a solid foundation, it is liable
to cave.    I saw about eight cuts, — some of them would
be about twenty feet back; they were about four feet
wide. . . . . In my opinion, as a miner, if those tunnels
were continued under and beneath that ditch, the result
would be, I think, to cave down and destroy the ditch."

On cross-examination, he said: "It would be a mere
opinion on my part that the tunnels would have the
effect of caving the ditch down.    It might occur, and
it might not.    In there it is all loose bed-rock.    That

would be the result of the action of the elements for ages. It is all sliding rocks, so far as I know. There are trees and brush growing on it."

Mr. Pelletreau: "In my opinion, the effect upon the ditch, if the tunnel is continued in the manner in which they have been running, is, that they will cave the ditch down and destroy it. That would be the result."

On cross-examination, he said: "If it was properly timbered, it would not cave. . . . . Q. It has not caused it within two years, and why should it cause it in the future? A. It would at any time, if the ditch were to break and cut the foot of the mountain away."

Mr. Beavers: "My opinion, as a miner, is, that if *those tunnels* were permitted to be run beneath the ditch, that if they continued on *cutting the face of the hill*, that after a while there would be no support at all. The hill is very steep, and a great mass of earth would shove it off."

Neither of the plaintiffs testified on the trial; and the nature and full extent of the threatened injury stated in their complaint is, "that defendant is engaged in running and excavating *tunnels*, starting at a point about fifty feet down the side of the mountain, below said ditch, and that he threatens to run and continue said *tunnels* under and beneath the bottom of said ditch; . . . . that the earth and ground composing the surface of the above-named mountain, at the above-named point, and over which said ditch passes as aforesaid, is of such a character that if an excavation is made below or under said ditch, and into said mountain, the waters conveyed in said ditch will percolate through and into said excavation, *and thereby cause a slide on said mountain which will destroy and carry away said ditch for a distance of from one hundred to two hundred feet.*"

The evidence has not the slightest tendency to prove that defendant threatens or intends to construct or continue any tunnel or cut, except this lower tunnel; therefore, the inquiry as to the probability of future injury to plaintiffs' ditch should be confined to the effect of continuing the lower tunnel.

The plaintiffs appear to be entitled to the right of way for their ditch, with vertical and lateral support for it; nothing more. Subject to these rights, the defendant is entitled to his mining claim,—to prospect, explore, and mine it through his lower tunnel, or in any other mode he may select. These rights of the parties are not incompatible, though subject to the maxim, *Sic utere tuo ut alienum non lædas.* (*Clark* v. *Willet,* 35 Cal. 548.) And the complaint is, that the defendant threatens and intends to violate this maxim, to the injury of plaintiffs. That the injunction granted unnecessarily restricts the defendant in the use of his own. property, by enjoining him from digging any tunnel in any manner under and beneath plaintiffs' ditch, is unquestionable. If defendant can construct his lower tunnel, or any other tunnel, beneath plaintiffs' ditch, in such manner as not to injure the ditch, he should be permitted to do so; for the evidence does not tend to prove that even the lower tunnel may not be so constructed; much less, that no tunnel at any other place beneath the ditch may not be constructed without possible injury to the ditch. (*Mc-Menomy* v. *Baud,* 87 Cal. 139.)

Furthermore, I think the testimony on the part of the plaintiffs, considered in connection with the undisputed facts and circumstances, had no substantial tendency to prove a reasonable probability that a continuation of defendant's lower tunnel, in the manner and direction in which it had been constructed to the extent of twenty-nine feet, would injure plaintiffs' ditch, or more than a remote possibility of such injury, and therefore there is no substantial conflict of evidence on this issue. Even. the possibility of such injury is negatived by a considerable preponderance of the whole evidence  But a mere possibility, or anything short of a reasonable probability, of injury is insufficient to warrant an injunction against any proposed use of property by its owner. "Injury, material and actual, not fanciful or theoretical, or merely possible, must be shown as the necessary or probable result of the action sought to be restrained." (*Genet* v.

*D. & H. C. Co.*, 122 N. Y. 529.) In *Lutheran Church* v. *Maschop*, 10 N. J. Eq. 57, the court said: "The court cannot grant an injunction to allay the fears and apprehensions of individuals; they must show the court that the acts against which they ask protection are not only threatened, but will in probability be committed, to their injury." In *Sherman* v. *Clark*, 4 Nev. 142, 97 Am. Dec. 516, the court said: "It must also be made to appear that there is at least a reasonable probability that a real injury will occur if the injunction be not granted." In High on Injunctions, sec. 790, it is said: "Nor will an injunction be continued against the erection of a structure, where the facts do not satisfactorily show a probability of irreparable injury to the complainants." (See also *Dorsey* v. *Allen*, 85 N. C. 358; 39 Am. Rep. 704; *Hall* v. *Rood*, 40 Mich. 49; 29 Am. Rep. 528; *McMenomy* v. *Baud*, 87 Cal. 139, and cases there cited; *Hoke* v. *Perdue*, 62 Cal. 545.)

It is claimed by respondents that defendant's mining claim is prospectively valueless, and therefore that defendant was never entitled to locate or to explore it, and is not injured by the injunction; and one or two of plaintiffs' witnesses testified that, in their opinion, there is no "pay-channel" in defendant's claim; while witnesses on the part of defendant expressed their opinions to the contrary. But it was proved without contradiction that defendant's claim is in the midst of a mineral region; that there were paying gravel mines in its immediate vicinity, among them that of the plaintiffs; and that the defendant had washed a small quantity of gold ($1.75) from earth taken from his upper tunnel. That defendant located and prospected his claim in good faith was sufficiently evinced by the fact that he had expended one thousand dollars in running the tunnel and cuts complained of. Under these circumstances, the question whether the defendant would succeed in discovering a pay-channel was immaterial for any purpose of this action. The plaintiffs did not claim the land for any other purpose than the right of way and support for their

ditch, and their right to this extent was not contro-verted. They were not entitled to question the right of the defendant to locate, possess, and explore the land as mineral land, subject to their admitted right of way. Only the government of the United States, or persons claiming the lands under the government as non-mineral land, could properly raise the question whether the land was subject to be located as mineral land.

The court found that " the ground where defendant is running his tunnel is absolutely worthless for mining purposes," and " that there is no evidence of any gravel channel either under or back of said ditch "; and it seems probable that this was the principal ground upon which the perpetual injunction was granted.

I think the judgment and order should be reversed, and the cause remanded for a new trial.

FOOTE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

DE HAVEN, J., SHARPSTEIN, J., McFARLAND, J.