[Sac. No. 1773. Department Two.—January 12, 1911.]

## ELIZABETH GALBREATH, Appellant, v. J. P. HOPKINS et al., Respondents.

WATER-RIGHTS—ARTIFICIAL DIVERSION OF WATERS OF POND—INJURY TO LOWER PROPRIETOR—INJUNCTION.—While the owner of upper land has the right to have the waters from his land flow in their natural course down upon the lands below, he has no right, by the construc-

tion of ditches or other artificial means, to turn waters which have naturally accumulated in ponds or depressions on his land upon the land of his neighbor lower down, and where water is thereby caused to flow upon the lands of another which would not naturally flow thereon, this is an invasion and injury to his right of property and a nuisance *per se,* the continuance of maintenance of which he has the right to have enjoined.

Id.—ACTUAL PECUNIARY DAMAGE NOT NECESSARY TO WARRANT INJUNCTION.—The owner of the lower land is entitled to an injunction restraining such wrongful acts of the upper landowners, notwithstanding the absence of evidence of any specific monetary damage occasioned thereby, for the reason that such conduct, if persisted in and permitted without objection for the statutory period, would ripen into a right as an easement or servitude to overflow the lower land.

Id.—EXTENT OF RIGHT OF OWNER TO DRAIN LAND.—The owner of land upon which surface waters accumulate has a right, by means of artificial ditches or other measures to redeem his land by discharging or removing these waters therefrom, legally constrained only to the extent that he shall not thereby injure his neighbor.

Id.—STATUTE OF LIMITATIONS AGAINST RIGHT TO INJUNCTION.—Where a landowner is exercising a right of removing and disposing of surface waters, and is doing so entirely upon his own land, an adjoining proprietor who may be so situated that a disregard of his rights may cause him injury, is not bound, at the peril of being denied any relief when injury is actually done him, to commence an action to prevent such possible damage. The statute of limitations against the right to maintain such action does not commence to run until actual injury has been occasioned to the adjoining proprietor.

APPEAL from a judgment of the Superior Court of Sutter County and from an order refusing a new trial. K. S. Mahon, Judge.

The facts are stated in the opinion of the court.

W. H. Carlin, for Appellant.

M. E. Sanborn, for Respondents.

LORIGAN, J.—This action is brought to enjoin defendants from maintaining a ditch through which surface waters, accumulated in a natural lake or pond on the lands of defendant, are drained and discharged upon the land of plaintiff.

A judgment was entered in favor of defendants from which,

and an order denying her motion for a new trial, plaintiff appeals.

Plaintiff is the owner of three hundred and sixty acres of land in Sutter County, sloping in a general southerly or southeasterly direction. Commencing several miles above her land and extending through it, is a natural depression commonly known as Live Oak Slough, which is of sufficient capacity to drain from all the land through which it flows, and in proximity to it on a higher level, the surface waters which are naturally tributary to it, including the surface waters from the lands of plaintiff; this slough is not, in legal contemplation, a watercourse, but is merely a natural depression into which the surface waters from the surrounding country gather in seasons of rainfall, and flow down into Feather River. The land of plaintiff is valuable agricultural land, especially adapted to the growing of grain, and the bed of the slough, on account of its moderate depression, is, except in seasons of high water, entirely capable of cultivation, and is by the plaintiff sowed to grain, and was so planted when the acts of defendants herein complained of occurred.

The lands of defendants consisted, in 1893, when the ditch hereafter mentioned was constructed, of part of a large tract owned by one Joseph Chandon, and prior to its subdivision known as the "Chandon land." Those portions of the lands of defendants through which the ditch in question was constructed lie to the north of the lands of plaintiff, and at a higher elevation, and slope down to and include part of the natural bed of Live Oak Slough, but are slightly depressed below the east bank thereof, and in ordinary seasons such lands are relieved from surface waters by their flowing into such depression and percolating into said slough.

But prior to 1893, while the entire tract was owned by Chandon, in seasons of excessive rainfall, the surface waters were wont to collect upon that tract and form two shallow ponds or lakes, distant about two miles from each other. These ponds were many acres in extent and were much below the surface of the surrounding country, but higher in elevation than the land of plaintiff, and the accumulated surface waters therein, on account of numerous natural ridges, or elevations of land between them and Live Oak Slough, could not be naturally got rid of except by percolation, seepage, and evap-

oration, and would never reach Live Oak Slough, unless by artificial aid through the construction of ditches for that purpose. In order to accomplish this, Joseph Chandon and others, in the year 1893, dug and excavated a ditch from the lower pond situated on the lands now owned by defendants. This ditch was about three hundred feet long and of sufficient width, depth, and grade to slowly but effectually carry, by connection between them, the waters from both ponds and empty them into Live Oak Slough. This ditch was constructed entirely on the lands now owned by defendants, its head being a little over two feet higher than its mouth, and it drained the waters into Live Oak Slough, upon the lands of defendants and about forty rods north of the land of plaintiff. When constructed in 1893 the waters carried down by this ditch did no damage to the land of plaintiff. Subsequent thereto and up to the spring of 1907 but little water passed through the ditch. In 1907 a tenant of the defendants undertook to excavate the ditch to allow the water to pass from the lower pond into the slough, but was enjoined by plaintiff. No water passed through the ditch in 1908. In 1909 the lower pond, which covered about twenty acres, was, through a heavy rainfall, filled with surface water to a depth of from one to twelve inches, which accumulated waters were by the defendants discharged through the ditch into the slough and they flowed down and spread over the land of plaintiff, damaging a crop of grain sown thereon, whereupon plaintiff brought this action to enjoin any further diversion of the water from the ponds through this ditch upon her land.

In their answer to the complaint defendants set up a prescriptive right to discharge the waters from this lower pond through the ditch to the Live Oak Slough and upon the land of plaintiff, acquired, they allege, under an adverse user of upwards of sixteen years.

The court found in favor of defendants as to said prescriptive right, and in addition found that plaintiff had suffered no serious damage to her land by the discharge of the accumulated waters from the pond upon them in March, 1909, the time it is alleged in the complaint that she was so damaged, and when this action was begun.

The appellant attacks these findings, particularly the finding in favor of defendants as to their prescriptive right, on the

ground that the evidence is insufficient to support them.

Little need be said about the finding of the court that no serious damage was done to the land of plaintiff by the overflow complained of. The uncontradicted evidence is, that the water discharged from the pond into the slough by the defendants flowed down and spread to a large extent over her field, which was sown to grain, and actually damaged her. There was, it is true, no evidence of any specific amount of damage in money which she suffered thereby. But proof of this was not necessary. If the overflow of her lands by defendants was wrongful, it was an invasion of her property rights. There was at least nominal damages, and she was entitled to an injunction restraining the defendants from further overflowing her land, because their conduct, if persisted in, and permitted by her without objection for the statutory period, would ripen into a right in their favor as an easement or servitude to overflow her land. The finding of the court can only be sustained upon the theory that having found that the defendants had acquired a prescriptive right to turn the water upon the land of plaintiff, any damage she might have sustained thereby was *damnum absque injuria* and could not be complained of.

This brings us to the principal finding in controversy,— namely, that sustaining the prescriptive right of defendants.

The theory of counsel for defendants and the trial court was that the act of defendants' predecessor in constructing the ditch and draining the water from the pond into the slough in 1893 was then an invasion of the property rights of the plaintiff and her right of action against such predecessor accrued then, and that permitting the existence of the ditch and the drainage of the water there through from the ponds into the slough for upwards of five years (in fact, defendants claimed for sixteen years) barred any right of action she originally had to prevent defendants from continuing to do so.

It is, of course, clear under the law that unless the defendants have acquired a right by prescription to discharge the water from the pond by artificial means upon the land of plaintiff, they have no right to do so at all. While the owner of upper land has the right to have the waters from his land flow in their natural course down upon the lands below, he has no right, by the construction of ditches or other artificial

means, to turn waters which have naturally accumulated in ponds or depressions on his land upon the land of his neighbor lower down (*Ogburn* v. *Connor,* 46 Cal. 347, [13 Am. Rep. 213] ; *Gray* v. *McWilliams,* 98 Cal. 157, [35 Am. St. Rep. 163, 21 L. R. A. 593, 32 Pac. 976]), and where water is thereby caused to flow upon the land of another which would not naturally flow thereon, this is an invasion and injury to his right of property and a nuisance *per se,* the continuance or maintenance of which he has the right to have enjoined. (*Learned* v. *Castle,* 78 Cal. 454, [18 Pac. 872, 21 Pac. 11] ; *Wood* v. *Moulton,* 146 Cal. 317, [80 Pac. 92].)

So, if the defendants have any right to turn the waters from the pond on their land upon the land of plaintiff by means of a ditch constructed in 1893, it must proceed from a prescriptive right to do so, or it does not exist at all.

Now as to the question whether the evidence supports the finding of the trial court in this respect.

We do not think it does. There is no doubt about the construction of the ditch in 1893 to drain the waters from the ponds, which it effectually did in a short time. It is not pretended, however, that such drainage precipitated any water upon the land of plaintiff or that any damage was occasioned it thereby. While the court finds that water from this lower pond flowed through the ditch from its construction in 1893 up to and including 1896—some four years—if this conclusion finds any support in the evidence at all, it is extremely slight. But accepting it as sustained by the evidence, the court does not find what quantity of water flowed therein, and it is quite certain that whatever did flow therein was an extremely small quantity. As a matter of fact, it is clear from the evidence that no attention was paid to this ditch or to the flow of water in it. The ditch was allowed to gradually fill up; it was for years made the burial place for large numbers of stock which had died on the ranch, and was further a common dumping-place for litter accumulating thereon. It is clear, too, that whatever water passed through this ditch was of such a small quantity that it never reached the land of plaintiff, and if it did not percolate through the ditch itself, it sunk and disappeared at its outlet upon defendants' own land at the slough. It is probable also that this neglected condition of the ditch, and the absence of any particular flow of water in it, was

attributable to the fact that there were no seasons of heavy rainfall during these intervening years after its construction, or those that occurred were of such intermittent character that the water passed off through the ditch from the pond by easy stages and lost itself in the soil at its mouth. We only discuss this condition of the ditch and the quantity of water drained through it to show that in whatever condition the ditch was maintained, or to what extent the water flowed through it, never at any time until 1909, when this action was brought, did waters flow down upon plaintiff's land either to her damage or at all. Although it was threatened to discharge them upon her land in 1907, the only year since 1893 when there was a heavy rainfall in that vicinity, she prevented this by an injunction, and it was not until 1909 that they actually flowed upon her land and damaged her crops, and then she immediately instituted this action for an injunction.

The theory of the defendants upon which their prescriptive right is claimed is, as we have said, that the plaintiff should have brought her action as soon as the ditch was constructed and the drainage into the slough above her lands was commenced. But this ditch was constructed through the defendants' own land by their predecessor in title and the waters from the pond were drained through it upon their own land. No right of the plaintiff was invaded or necessarily threatened by this action. The owner of land upon which surface waters accumulate has a right, by means of artificial ditches or other measures to redeem his land by discharging or removing these waters therefrom, legally constrained only to the extent that he shall not thereby injure his neighbor. Where a landowner is exercising a right of removing and disposing of surface waters, and is doing so entirely upon his own land, an adjoining proprietor, who may be so situated that a disregard of his rights may cause him injury, is not bound, at the peril of being denied any relief when injury is actually done him, to commence an action to prevent this possible damage. An injunction against the legitimate use of one's own property will not be granted at the suit of another unless it clearly appears that its use in a given way will necessarily entail an irreparable injury to the complainant. As said in *Lorenz* v. *Waldron*, 96 Cal. 243, [31 Pac. 54]: "A mere possibility, or anything short of a reasonable probability, of injury, is insufficient to

warrant an injunction against any proposed use of property by its owner." It is always to be assumed, where a party is attempting to exercise legal rights which may never necessarily injure another if properly exercised, that the party will so exercise them that no injury will occur, and if in their exercise they shall ultimately become injurious, that he will cease to further exercise them. This principle applies here. The defendants were exercising their legal rights in draining their property, and had a right to continue doing so until their conduct showed that they would or were actually injuring plaintiff thereby. Up to the time they actually did so in 1909, if plaintiff had brought an action to enjoin a maintenance of the ditch, the ready and reasonable answer to her suit would have been: This ditch is constructed on our land and its outfall is on our land and we have a legal right to so use our property. There is an easy grade from the outlet point to our land on the slough; we can and will control the water flowing from the pond, so that but such a quantity shall pass to the slough depression as shall be absorbed therein; it will, instead of flowing over your land, naturally percolate beneath it, and instead of being a damage, actually benefit it. This being true, it is obvious that the plaintiff was not called upon to commence any action to restrain defendants until there was an actual invasion of her property rights, and as this did not occur until the overflow of 1909, her action was properly commenced at that time. In *Grigsby* v. *Clear Lake Water Works Co.*, 40 Cal. 396, speaking of the evidence which was essential to establish a prescriptive right to overflow land, this court said: "To acquire this right there must have been an uninterrupted enjoyment under claim of right for the period of five years. There must have been an actual occupation by the flow of water to the knowledge of the plaintiff and such as to occasion damage and give him a right of action. There must have been such a use of the premises and such damage as will raise a presumption that plaintiff would not have submitted to it unless the defendant had acquired a right so to use it." See, also, *Carson* v. *Hayes,* 39 Or. 97, [65 Pac. 814]; *Woodruff* v. *North Bloomfield G. M. Co.*, 18 Fed. 753; *Miller* v. *Keokuk etc. Ry. Co.*, 63 Iowa, 680, [16 N. W. 567]; *Austin & N. Ry. Co.* v. *Anderson,* 79 Tex. 427, [23 Am. St. Rep. 350, 15 S. W. 484].)

We have no doubt, as the court found, that it was of great benefit and advantage to the defendants to have their lands drained, but it also appears that it would be to the great injury and detriment of the plaintiff to have them drained on her land, and as there was nothing to show that the defendants had acquired any prescriptive right to subject her land to this burden, she had a right to an injunction preventing them from doing so.

The judgment and order appealed from are reversed.

Melvin, J., and Henshaw, J., concurred.