[Civ. No. 1889.   Third Appellate District.—November 7, 1918.]

BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY, Appellant, v. J. ELLIS RODLEY, Respondent.

WATERS AND WATER RIGHTS—SURFACE WATER—DRAINAGE—EASEMENT. The owner of the land has an easement to have the surface water thereon flow on to the land of a lower adjoining owner in its natural course by its accustomed channel, but he cannot accelerate the flow by means of artificial ditches, or increase the drainage to the injury of the lower owner.

APPEAL from a judgment of the Superior Court of Butte County.   H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Wilson & Wilson and McCoy & Gans, for Appellant.

Guy R. Kennedy, for Respondent.

BURNETT, J.—Plaintiff and defendant owned adjoining tracts of land, the land of the latter being higher than that of the former.   It is alleged in the complaint that defendant dug a ditch upon the defendant's said tract of land over and along nearly the entire length of said land and up to the point where it adjoins plaintiff's land, for the purpose of draining defendant's said tract of land, and caused all rain and surface waters thereon to run to and upon said plaintiff's land, and said ditch since its construction has so drained defendant's tract of land, and "has carried all of said surplus rain waters contrary to their natural course, to the end of said ditch at the said point of the boundary line of the said two tracts of land."   It is further alleged that these surface waters have "flowed to and upon and over and across the plaintiff's said tract of land and have caused large bodies of water to form upon the plaintiff's said tract of land, and have thereby made a large portion of plaintiff's said tract of land unfit for cultivation or use, and have thereby caused great and irreparable damage and injury to plaintiff and to plaintiff's said tract of land."   There is also an allegation that it is the purpose of defendant to continue the maintenance of said ditch

and to so perpetuate the overflow of plaintiff's land. The prayer was, therefore, for damages and an injunction to prevent any further injury to plaintiff's property. The findings and judgment, however, were in favor of defendant and from said judgment the appeal has been taken. There is, really, no substantial conflict in the evidence upon any material point. There are various minor differences, but the witnesses are in somewhat unusual accord on all important matters. A careful reading of the record discloses these facts as stated substantially by appellant: 1. Defendant's land is nearly level and has but little natural runoff or drainage; 2. The surface is somewhat lower toward the center of the tract than on the east and west sides thereof; 3. Through the tract from east to west are three elevations or ridges and these have formed three separate and distinct depressions or "pot-holes" of considerable extent for holding water; 4. During the winter the rains cause these "pot-holes" to become filled with water which varies in depth from a few inches to a foot or more; 5. It was only during excessive and unusual floods that these pot-holes overflowed and the water ran off of defendant's land by natural course; 6. Before the construction of the ditch hereinafter mentioned these depressions held the water on defendant's land as late as the month of May, and many of defendant's fruit trees were killed by the standing water, and he was also prevented from cultivating the soil and raising crops thereon; 7. For a short distance of a few hundred feet from the southeast corner of defendant's land there was a swale, or watercourse which would conduct water finding its way therein on to the plaintiff's land; 8. For the purpose of conducting the surface and surplus waters from his said land on to and through the said swale on to plaintiff's said land and thereby draining his own land, especially the portions covered by said pot-holes, defendant in the fall of 1914 caused to be constructed a ditch throughout almost the entire length of his said land and so as to connect with said swale, and, also, caused said swale to be cleaned out and deepened; 9. The result of the construction of said ditch and of the change made in the swale was that said land of defendant, especially said depressions or pot-holes, were drained and the waters caused to flow to and upon said land of plaintiff; 10. This result greatly increased the amount of water flowing from said defendant's said land to and upon plaintiff's and

caused material damage to plaintiff and to its said land; 11. It was and is the intention of defendant, by means of said ditch, to continue to so conduct said surplus water on to the land of plaintiff and he will do so unless restrained and enjoined by the court.

What are the legal principles applicable to the situation created by the foregoing facts? As to the question there can be no doubt in this state, as the law of and pertaining to surface waters is clearly settled. The upper proprietor has no right to divert by artificial means the surface waters standing upon his own land to the land of the lower proprietor to the prejudice of the latter. He must allow it to pursue its natural course by its accustomed channel. He has an easement to have the water flow on the land of the lower proprietor, but, it is limited to the disposition of the water through the chosen channels of nature. The owner of the upper land cannot accelerate by means of artificial ditches or increase the drainage of his own land to the injury of the lower owner. It would, of course, follow that, if the surface water from only a portion of his land flowed in its natural course to the land of his neighbor, this would not justify him in so draining by means of ditches the residue of his land. The principle does not apply to a gradual increase in drainage that may be caused by the cultivation of the soil according to the usual method. We are, however, not dealing with that condition, but we are clearly confronted with the fact that by artificial means the defendant has caused a considerable portion of his land to be drained and the water precipitated on to the land of plaintiff, whereas, according to the course of nature said water would not reach said land.

Among the many decisions in this state bearing upon the situation it is sufficient to refer to some of the later ones. In *Rudel* v. *Los Angeles County,* 118 Cal. 281, [50 Pac. 400], some of the earlier cases are reviewed, and it was held that the upper proprietor could not gather and concentrate surface water from a large area in a single channel and precipitate it in volume upon the servient tenement, but only that he was entitled to have it flow in its wonted manner without obstruction.

In *Woods* v. *Moulton,* 146 Cal. 317, [80 Pac. 92], it was said: "Appellant's principal contention is that under the statutes of this state (Stats. 1850, p. 219) and under section

4468 of the Political Code as the common law of England is made the rule of decision in this state where not repugnant to or inconsistent with our constitution or laws, the defendants' acts in ridding themselves of this storm-water were entirely consistent with their rights, and if plaintiff suffered damage therefrom it was *damnum absque injuria.* Such, indeed, was the rule at common law, but by a long course of decisions in this state consistently adhered to, the rule of the civil law has been adopted and has become the rule of property." (Citing a large number of cases.) "It follows, therefore, that the owner of higher lands has no right, for his own relief, either to divert surface or storm waters from his lands on to the lands of another, over which they would not naturally have flowed, nor has he the right by accumulating the surface waters upon his own lands, in ditches, or other like artificial channels, to precipitate them upon his neighbor's land in larger quantities or in different form from that which they would have had or taken in the course of nature."

In *Galbreath* v. *Hopkins,* 159 Cal. 297, [113 Pac. 174], it is said: "It is, of course, clear under the law that unless defendants have acquired a right by prescription to discharge the water from the pond by artificial means upon the land of plaintiff they have no right to do so at all. While the owner of upper land has the right to have the waters from his land flow in the natural course down upon the lands below, he has no right, by the construction of ditches or other artificial means, to have waters which have naturally, accumulated in ponds or depressions on his land flow upon the land of his neighbor lower down, . . . and where water is thereby caused to flow upon the land of another which would not naturally flow therein, this is an invasion and injury to his right of property and a nuisance *per se,* the continuance or maintenance of which he has the right to have enjoined."

*Heier* v. *Krull,* 160 Cal. 441, [117 Pac. 530], is to the same effect. Therein it is declared: "The gist of the threatened injury alleged in the complaint is the making of a new ditch and the alteration of the slough in such a manner that the water falling on the land north of the alleged ridge, and which did not before reach plaintiff's lands, will be carried to and upon said lands through said proposed ditch across the ridge. Every land owner must bear the burden of receiving upon his land the surface water naturally falling upon

land above it and naturally flowing to it therefrom and he has the corresponding right to have the surface water naturally falling upon his land or naturally coming upon it, flow freely therefrom upon the lower land adjoining it, as it would flow under natural conditions. From these rights and burdens the principle follows that he has a lawful right to complain of others, who, by interference with natural conditions cause such surface waters to be discharged in greater quantities or in a different manner upon his land, than would occur under natural conditions. This is the settled law of this state.''

The record before us brings this case within the doctrine of these decisions. It may be admitted that the surface waters from a large portion of the defendant's land is accustomed to flow in accordance with the topography and slope of the country on to the land of plaintiff, but the case is entirely different in reference to the waters that are accumulated in said pot-holes. Indeed, the testimony of the defendant himself shows very clearly that the purpose of the construction of the ditch was to drain these depressions so as to save his orchard. If said waters had been accustomed to flow off in a natural way, there would have been obviously no necessity for the construction of the ditch. Defendant seems to have proceeded upon the theory that the rule of the common law as to surface waters prevails in this state and the court below apparently took that view of the case. Counsel for respondent also argues from the same standpoint, and he cites from other jurisdictions well-considered decisions upholding his contention, but they do not state the rule applicable in California.

It is to be regretted that the accumulated surface waters on defendant's land have been to him the occasion of such injury, but in morals as well as in law he is not justified in shifting this burden to his neighbor. Of course, he must use his own property so as not to willfully injure another, or as the Latins have it, *"sic utere tuo ut alienum non laedas."*

If it had been shown that by percolation, seepage, or other natural method said waters were accustomed to flow over plaintiff's land and that the burden of the servitude had not been appreciably increased by the construction of the ditch we would, of course, have a different case. We find no such condition, however.

We have not considered other matters, as we deem the foregoing decisive so far as this appeal is concerned.

The judgment is reversed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 7, 1918, and the following opinion then rendered thereon:

THE COURT.—We have carefully examined the interesting petition of respondent for a rehearing, but we do not think the evidence is sufficient to take the case out of the rule as to surface waters which was enunciated in our opinion filed herein. It is possible that such evidence may be supplied on another trial. There are a few general observations by some of the witnesses that might be construed as having some tendency to support respondent's position, but we think the evidence is too uncertain and indefinite to justify the finding that all the surface waters from defendant's land "flow by their natural course into natural channels" upon the plaintiff's said tract of land.

Of course, if plaintiff has no further interest in the litigation, as suggested by respondent, this fact can be shown on the retrial, but there is nothing in the record to justify us in taking cognizance of that fact.

The petition for rehearing is denied.