[Civ. No. 7189.   Third Dist.   Mar. 4, 1946.]

HENRY HAHN, Appellant, v. ELIZABETH CURTIS,
Respondent.

C. D. McComish for Appellant.

Hudson Ford for Respondent.

ADAMS, P. J.—On November 16, 1943, appellant filed his first complaint in this action, and on July 18, 1944, filed his first amended complaint. He alleged therein that he was the owner of certain described lands which were contiguous for a distance of one-fourth mile to lands owned by defendant; that near the dividing line, but upon defendant's land, there was a natural ridge of land that directed the flow of surface waters northeast, away from plaintiff's land, but that defendant, prior to 1942, had caused or permitted a ditch to be dug through said ridge, which said ditch she had, in 1941 or 1942, caused to be deepened, and that she had thereby caused the surface waters on her land and lands west and southwest thereof to flow from their natural channel onto plaintiff's land so that in 1942 plaintiff's crop of barley had been destroyed to his damage in the sum of $1,365. Plaintiff prayed judgment for the said amount, and for an order requiring defendant to fill said ditch and confine said surface waters to their natural channel.

Defendant answered said complaint, alleging that the ditch had been dug through the ridge many years before, and denying that she had caused same to be deepened. She denied damage to plaintiff's crops, and further alleged that plaintiff's action was barred by sections 338 and 339 of the Code of Civil Procedure. As a separate defense she alleged that

she and/or her predecessor in interest had ''maintained, used, held and possessed adversely to the legal title of Plaintiff herein, said ditch or drain for more than five (5) years before the commencement of the action; that said use, maintenance, holding and possession was hostile to the record title and that such use was open, continuous and notorious, and that it was made under claim of right, and there was conveyed to Plaintiff herein a knowledge of the asserted claim''; that ''there had been uninterrupted enjoyment of said use under claim of right for more than five (5) years which has ripened into an easement and/or servitude to overflow the lands of Plaintiff; there has been an actual occupation of Plaintiff's land by the flow of water through Defendant's ditch to the knowledge of plaintiff, and such as to occasion damage more than five (5) years ago and to give him a right of action more than five (5) years ago.'' And as an additional defense defendant alleged ''That Defendant, prior to the commencement of this action, had no knowledge of the existence of the alleged nuisance, and cannot be held liable for damages, if any.''

Trial was had by the court which made findings as follows:

''4. That it is true, prior to the year 1942, namely, in the year 1917, and more than five (5) years prior to the filing of this action, Defendant or her predecessor in interest, cut or dug said ditch or drain through said ridge of land, and from said year 1917, Defendant has used same to drain water from Defendant's land on to Plaintiff's land; that said use was, and has been, hostile to the record title of Plaintiff, and was open, continuous and notorious, and that it was made under claim of right and was used adversely to Plaintiff continuously since the year 1917, and that such claim for more than five (5) years was so asserted as to convey to Plaintiff a knowledge of the asserted claim; that it is true that said ditch or drain has retained the same approximate depth and width since the year 1934.

''5. That it is not true that in the year 1941 or in the year 1942, Defendant caused or permitted said ditch to be deepened.

''6. That it is not true that Plaintiff sustained any damages for which Defendant is liable.''

It was then concluded that defendant ''has acquired a prescriptive right and/or easement to run surface waters through said ditch or drain from Defendant's land on to Plaintiff's land.'' The judgment which followed was merely

that plaintiff take nothing and that defendant recover her costs.

A motion for a new trial was denied and plaintiff appealed from both the judgment and the order denying a new trial.

The first questions presented for determination are whether the findings of the trial court sustain its conclusion of law that defendant has acquired a prescriptive right or easement to run surface waters through her ditch onto plaintiff's land and whether the evidence sustains the findings, particularly the finding that defendant, or her predecessor in interest, has ever since 1917 continuously used the ditch on her land to drain water onto plaintiff's land, and that said use was hostile to plaintiff, open, continuous and notorious and under claim of right. It should be noted first, that defendant did not in her answer allege that she and/or her predecessor in interest had continuously or at all used the ditch through the ridge on her land to drain water onto plaintiff's land. Her allegation is that she had maintained, used, held and possessed the ditch adversely to plaintiff's title for more than five years, and that said use was open, continuous and notorious, and under claim of right, and that said "use" had ripened into an easement to overflow plaintiff's lands. Obviously defendant's use, maintenance and possession of a ditch on her own land could never be adverse to plaintiff or anyone else or result in an easement or servitude unless and until such use resulted in an invasion of plaintiff's lands.

*Galbreath* v. *Hopkins*, 159 Cal. 297 [113 P. 174], is a comparable case on its facts, and as the decision therein is applicable to the one before us we are constrained to quote liberally therefrom. There plaintiff sued to enjoin defendants from maintaining a ditch through which surface waters, accumulated in a natural pond or lake on the lands of defendants, were drained upon plaintiff's land. Defendants claimed a prescriptive right to discharge the waters of this pond through a ditch into a slough and thence upon the lands of plaintiff, alleging an adverse user of upwards of sixteen years.

The evidence showed that about 1893 the then owner of defendants' land had dug the ditch in controversy, same being entirely on his own land. From that time until 1907 some water passed through the ditch but did no harm to plaintiff's lands. That year a tenant of defendants undertook to excavate the ditch to allow water to pass into the slough, but was enjoined by plaintiff. In 1908 no water passed through the

ditch; but in 1909, by reason of a heavy rainfall, waters from defendants' lands flowed down and overspread plaintiff's lands, damaging a crop of grain, whereupon plaintiff brought his action. The trial court found that defendants had acquired a prescriptive right, and also that plaintiff had suffered no damage. On appeal the judgment was reversed on the ground of the insufficiency of the evidence. Regarding the prescriptive right, the court said (p. 301) that the theory of the trial court was that the act of constructing the ditch and draining the water from the pond into the slough in 1893 was then an invasion of the property rights of plaintiff and that her right of action against defendants' predecessor accrued then, and that permitting the existence of the ditch and the drainage of water through it into the slough for more than the statutory period barred any right of action plaintiff originally had to prevent defendants from continuing to do so. But the court said, pages 301-302:

"It is, of course, clear under the law that unless the defendants have acquired a right by prescription to discharge the water from the pond by artificial means upon the land of plaintiff, they have no right to do so at all. While the owner of upper land has the right to have the waters from his land flow in their natural course down upon the lands below, he has no right, by the construction of ditches or other artificial means, to turn waters which have naturally accumulated in ponds or depressions on his land upon the land of his neighbor lower down (*Ogburn* v. *Connor,* 46 Cal. 347, [13 Am. Rep. 213]; *Gray* v. *McWilliams,* 98 Cal. 157, [35 Am. St. Rep. 163, 21 L.R.A. 593, 32 P. 976]), and where water is thereby caused to flow upon the land of another which would not naturally flow thereon, this is an invasion and injury to his right of property and a nuisance *per se,* the continuance or maintenance of which he has the right to have enjoined. (*Learned* v. *Castle,* 78 Cal. 454 [18 P. 872, 21 P. 11]; *Wood* v. *Moulton,* 146 Cal. 317, [80 P. 92].)

"So, if the defendants have any right to turn the waters from the pond on their land upon the land of plaintiff by means of a ditch constructed in 1893, it must proceed from a prescriptive right to do so, or it does not exist at all."

Also it said, pages 303-304:

"The theory of the defendants upon which their prescriptive right is claimed is, as we have said, that the plaintiff should have brought her action as soon as the ditch was con-

structed and the drainage into the slough above her lands was commenced. But this ditch was constructed through the defendants' own land by their predecessor in title and the waters from the pond were drained through it upon their own land. No right of the plaintiff was invaded or necessarily threatened by this action. The owner of land upon which surface waters accumulate has a right, by means of artificial ditches or other measures to redeem his land by discharging or removing these waters therefrom, legally constrained only to the extent that he shall not thereby injure his neighbor. Where a landowner is exercising a right of removing and disposing of surface waters, and is doing so entirely upon his own land, an adjoining proprietor, who may be so situated that a disregard of his rights may cause him injury, is not bound, at the peril of being denied any relief when injury is actually done him, to commence an action to prevent this possible damage. An injunction against the legitimate use of one's own property will not be granted at the suit öf another unless it clearly appears that its use in a given way will necessarily entail an irreparable injury to the complainant. As said in *Lorenz* v. *Waldron*, 96 Cal. 243, [31 P. 54] : 'A mere possibility, or anything short of a reasonable probability, of injury, is insufficient to warrant an injunction against any proposed use of property by its owner.' It is always to be assumed, where a party is attempting to exercise legal rights which may never necessarily injure another if properly exercised, that the party will so exercise them that no injury will occur, and if in their exercise they shall ultimately become injurious, that he will cease to further exercise them. This principle applies here. The defendants were exercising their legal rights in draining their property, and had a right to continue doing so until their conduct showed that they would or were actually injuring plaintiff thereby. Up to the time they actually did so in 1909, if plaintiff had brought an action to enjoin a maintenance of the ditch, the ready and reasonable answer to her suit would have been: This ditch is constructed on our land and its outfall is on our land and we have a legal right to so use our property. There is an easy grade from the outlet point to our land on the slough; we can and will control the water flowing from the pond, so that but such a quantity shall pass to the slough depression as shall be absorbed therein; it will, instead of flowing over your land, naturally percolate beneath it, and instead of being a damage, actually benefit it.

This being true, it is obvious that the plaintiff was not called upon to commence any action to restrain defendants until there was an actual invasion of her property rights, and as this did not occur until the overflow of 1909, her action was properly commenced at that time. In *Grigsby* v. *Clear Lake Water Works Co.*, 40 Cal. 396, speaking of the evidence which was essential to establish a prescriptive right to overflow land, this court said: 'To acquire this right there must have been an uninterrupted enjoyment under claim of right for the period of five years. There must have been an actual occupation by the flow of water to the knowledge of the plaintiff and such as to occasion damage and give him a right of action. There must have been such a use of the premises and such damage as will raise a presumption that plaintiff would not have submitted to it unless the defendant had acquired a right so to use it.' See, also, *Carson* v. *Hayes,* 39 Or. 97 [65 P. 814]; *Woodruff* v. *North Bloomfield G. M. Co.,* 18 F. 753; *Miller* v. *Keokuk etc. Ry. Co.,* 63 Iowa, 680 [16 N.W. 567]; *Austin & N. Ry. Co.* v. *Anderson,* 79 Tex. 427 [23 Am.St.Rep. 350, 15 S.W. 484].)''

The Galbreath case was cited in *Collins* v. *Sargent,* 89 Cal. App. 107, at page 116 [264 P. 776], where the court said: ''The statute of limitations in favor of the use does not commence to run until actual injury has been occasioned to the adjoining proprietor.''

*Carlisle* v. *Cooper,* 19 N.J.Eq. 256, is also pertinent, though there the maintenance of a dam instead of a ditch upon defendant's lands was involved. The court there said, page 260:

''In case of a dam, the easement acquired is not the right of maintaining a dam or structure upon the land of the party himself, but the right to flow back the water on the land of his neighbor. He may build on his own land a dam of any height, provided it flows back no water. His neighbor has no right of action; his suffering it is no acquiescence in any thing from which a grant or permission can be presumed. And the prescription, to be valid, must be to flow back the water, by having done so for twenty years. No one is bound to measure the dam of the adjoining proprietor, and employ an engineer to calculate whether, if kept tight and full, it will throw water upon him. But when it does throw water upon him, if he permits it for twenty years, a grant will be presumed; but this only to the extent to which his land was habitually or usually flowed.'' Also see *Meigs* v. *Pinkham,*

159 Cal. 104 [112 P. 883]; *Murphy* v. *Calispel Duck Club,* 163 Wash. 366 [300 P. 1060], and *Town of Bennington* v. *Fillmore & Slade,* 98 Vt. 405 [130 A. 137, 143].

██ It is elementary that the burden is upon one claiming the acquisition of a right by prescription to prove same (*Ward Redwood Co., Inc.,* v. *Fortain,* 16 Cal.2d 34, 43 [104 P.2d 813]; 25 Cal.Jur. 1154; *Haight* v. *Costanich,* 184 Cal. 426, 435 [194 P. 26]; *Barlow* v. *Frink,* 171 Cal. 165, 170 [152 P. 290]) by the clearest and most satisfactory proof (*Pyramid Land etc. Co.* v. *Scott,* 51 Cal.App. 634, 646 [197 P. 398], 1 Cal.Jur. 636, § 95); and to establish all of the elements essential to such title (*Clarke* v. *Clarke,* 133 Cal. 667, 669 [66 P. 10]; *Pyramid Land etc. Co.* v. *Scott, supra*). ██ These elements are actual, open and notorious use, hostile and adverse to the title of the party against whom the adverse claim is made, continuous and uninterrupted for the statutory period, under claim of right. (25 Cal.Jur. 1157-1158.)

██ Therefore, in this case, in order to establish a prescriptive right to flood plaintiff's lands by drainage from her own lands, it was necessary for the defendant to allege and prove that she had, for the statutory period, actually discharged drainage waters upon plaintiff's lands, openly, continuously and uninterruptedly for more than five years, and that she had done so under claim of right and to the knowledge of plaintiff unless such invasion was so open and notorious as to impute knowledge. ██ We think that defendant has neither alleged nor proved these elements, and that, therefore, the evidence does not sustain the findings of the trial court in this respect. As above stated, defendant alleged in her answer that she could not be held liable for damages because she "had no knowledge of the existence of the alleged nuisance." Plainly, if she had no knowledge that the waters draining through her ditch were invading plaintiff's land such invasion cannot have been made under a claim of right on her part, and there is no evidence that she ever communicated to plaintiff any claim of right to drain the waters from her land upon his land.

As regards plaintiff's knowledge, he testified that no water came upon his land from defendant's ditch prior to 1942; and defendant produced no witness who testified to any actual knowledge on plaintiff's part. Defendant produced witnesses who testified to the existence of the ditch on defendant's land, and there was some evidence that same was visible from the

road between plaintiff's land and that of defendant; but no witness testified that the flow of water through it was thus visible. The only testimony produced by defendant that water had been discharged through said ditch onto plaintiff's lands prior to 1941 or 1942, was that of George Reister and his wife whose property adjoined defendant's on the south. Mr. Reister testified that he had been on his land since 1933, and that water had flowed through the cut onto the Hahn land every winter, with the possible exception of two or three dry winters. When those two or three dry winters occurred he did not state, nor did he testify as to the amount of water which flowed onto Hahn's land, or that he had ever seen it standing on the land, or that it had damaged same or the crops thereon. For all that appears, the amount that flowed may have been a very small quantity. Mrs. Reister's testimony was substantially the same as that of her husband, saying that water runs through the ditch onto Hahn's land in wet winters.

■ The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired. (Civ. Code, § 806.) Rights acquired by prescription are *stricti juris* and cannot extend beyond the use. (*Anderson* v. *Southern California Edison Co.*, 77 Cal.App. 328, 335 [246 P. 559]; *Pacific Gas & Elec. Co.* v. *Crockett Land & Cattle Co.*, 70 Cal.App. 283 [233 P. 370].)

■ The testimony of defendant's witnesses was insufficient to show that defendant had for the statutory period openly, continuously and uninterruptedly actually discharged drainage waters upon plaintiff's land under claim of right and to the knowledge of plaintiff, or to impute knowledge to plaintiff that defendant was claiming an adverse right so to do; and it signally fails to show that plaintiff suffered any damage either to his lands or his crops from drainage prior to 1942.

As to the damage sustained by him in 1942, the testimony of plaintiff is uncontradicted. In view of this fact the judgment of the trial court that plaintiff take nothing must be assumed to have been based upon its conclusion that defendant had acquired a prescriptive right to overflow plaintiff's lands; and since the evidence is insufficient to support such a conclusion, the judgment appealed from is reversed.

Peek, J., and Thompson, J., concurred.