R. C. JOHNSTON, *Appellant*, v. CHARLES W. HYRE, *Appellee.*

No. 16,535.

SYLLABUS BY THE COURT.

1. WATERCOURSES—*Diversion and Return of the Stream.* The owner of land through which flows a running stream of water in a well-defined channel has a right to divert the stream from the channel upon his own land, provided he returns it unimpaired to the channel upon his own land.

2. ——— *Surface Water Accumulated and Cast in a Volume upon Adjacent Land.* The owner of land is not responsible for injuries occasioned by the flow of surface water from his land upon adjacent lands, but if he causes it to be accumulated and cast in a volume upon the land of his neighbor he is responsible for the increased damages, if any, caused thereby.

3. LATERAL SUPPORT—*Injury to Which Plaintiff Contributed—Damage Not Apportionable.* A landowner has a right to dig a ditch upon his own land, along and adjoining the land of another, so long as the effect thereof is such as not to interfere with the lateral support of his neighbor's land; but if the lateral support of his neighbor's land is removed and damage results therefrom, without fault on the part of the neighbor, he is responsible therefor. If the neighbor, by any act or acts, assembles a quantity of water and casts it into the ditch in such a manner as to increase the injury to his own land, and the amount of injury done by each is not apportionable, he can not recover.

Appeal from Douglas district court. Opinion filed July 9, 1910. Affirmed.

*Bishop & Mitchell, George J. Barker,* and *Raymond F. Rice,* for the appellant.

*John Q. A. Norton,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was brought by R. C. Johnston to recover damages for the encroachment upon his land, and the removal of the lateral support thereto.

Johnston v. Hyre.

caused by the digging of a ditch on his own land by the defendant, Charles Hyre, near the boundary line of two quarter sections of land owned respectively by each party.   The two sections have been owned as above stated continuously since before the digging of the ditch complained of.    Tracts 1, 2, 3 and 4 have been owned by the plaintiff, and tract 5 by the defendant, as shown upon the subjoined plat:

To the southward of tract 4 is a range of hills, from which for forty years and more, in times of heavy rains or melting snows, there has been discharged quite a large volume of water, through a high-banked water-course, upon tract 4.   At such times the water spreads out considerably over tract 4, the corner of tract 3, to a greater extent upon tract 5, and to some extent upon the southern part of tract 1, where it joins a water-

course flowing across the western part of tract 5, across tract 1, and finally emptying into the Wakarusa river.

It is contended by the plaintiff that there was a well-defined watercourse across each of these tracts. The court found that this was not true as to a portion of tract 4 and the greater part of tract 5. But we regard this as rather immaterial. It is undisputed that the water in flood times passed across the lands as above indicated. It is also true that portions of the four tracts of land were marshy, and the water at times spread out over such portions.

Sometime between 1890 and 1893 Hyre dug on his own land the ditches marked A and B. About 1893 or 1894 he dug the ditches marked C and D, extending parallel to and about ten feet distant from his east and north lines, respectively, and closed up ditches A and B.

When first dug, ditches C and D were about three feet deep and six or seven feet wide at the top. At the commencement of this action the ditch along the east line of Hyre's land was six or seven feet deep, and at places forty to fifty feet wide. Some of the plaintiff's land had caved in and was washed away by reason of this ditch, and a portion also of the hedge along the plaintiff's west line was undermined.

Tract 3 is considerably higher than tract 5, to which it gradually slopes.

Next to the hedge, and parallel to ditch C, the plaintiff had a roadway. The water falling upon tract 3, upon which furrows had been plowed east and west, evidently to facilitate the drainage thereof, followed the furrows to the roadway, and then down the roadway, to the injury thereof, finally escaping over the roadway and through the hedge into the ditch. To remedy this the plaintiff caused a tiling to be placed under and across the roadway.

Sometime after the digging of ditches C and D the plaintiff and the defendant joined in constructing ditch E, on tract 1 of the plaintiff's land. This ditch

had the effect of giving greater rapidity to the flow of water from ditches C and D, and of. discharging it more rapidly into the watercourse leading to the Wakarusa.

The court also found that a year or two before the bringing of the action the plaintiff constructed on his tracts 3 and 4 ditch F, which had the effect of gathering up the water which theretofore had spread out to a considerable extent on these lands and of throwing it into ditch C.

The foregoing is an abstract of the findings made by the court, as to some of which the evidence is conflicting, and as to others of which there is little evidence, except that the lay of the land as described by all of the witnesses corroborates the findings of the court.

The case was tried in 1908, and the court found that the evidence showed no damage to the plaintiff's land by the water flowing through ditch C until about four years before the trial, and that altogether the plaintiff had been damaged in the sum of $250; that about one-half of the damage had occurred within two years prior to the filing of the petition; that the plaintiff would have been entitled to recover $125 damages for the maintenance of ditch C, which had become a nuisance, had not the plaintiff by his conduct contributed to the injury; and it also found that it was impossible to apportion the amount of injury caused by the action of the defendant and that caused by the plaintiff; that by reason thereof the plaintiff was entitled to recover nothing, and judgment was rendered against him for costs.

It being undisputed that the flood waters spread out over a considerable portion of tract 4, the corner of tract 3, across tract 5, and somewhat upon tract 1, and that portions of those tracts were marshy and wet, it seems quite immaterial, even if the evidence was undisputed, that there was originally something of a

marked watercourse across all of these tracts. It is unquestioned that Hyre had the right to dig ditches A and B on his own land, even if there was a water-course, provided he returned the water to the natural channel upon his own land, as it is undisputed that he did.

It is also unquestioned that he had the right to close up ditches A and B and dig ditches C and D upon his own land, so long as it did no damage to the land of the plaintiff; and it is likewise unquestioned that in time ditch C resulted in considerable damage to the plaintiff and became a nuisance.

If the defendant alone was responsible for this injury the plaintiff was entitled to recover for the damages occurring from the continuing trespass within two years prior to the beginning of the action. It is equally clear that if the plaintiff materially contributed to the injury which resulted to his land, and that the resulting damage from his acts and those of the defendant were impossible of apportionment, he is entitled to recover nothing. The plaintiff had a right to maintain this roadway upon his own land, and to furrow his land for the purpose of draining it, unless in so doing he accumulated the surface water and cast it in a volume into the ditch, which resulted, as the evidence shows it did, in carrying away a V-shaped block of his own land and casting it into the ditch.

The injury caused by the action of the water flowing through ditches C and D is proportionate in some degree to the volume of water and the rapidity of the flow thereof through those ditches, and it is evident that the opening of ditch E, which was done by the plaintiff and the defendant jointly, permitted the freer escape of the water from ditch D, and increased the rapidity of the flow through both ditches C and D. It is also apparent that the making of ditch F, which the plaintiff had a right to make upon his own land, assembled or gathered up the water which naturally

Johnston v. Hyre.

spread out over these lands, cast it into ditch C, and contributed to the injury complained of.

It is said that the water from ditch F was discharged into the old watercourse, but, as shown by the plat, ditch C had extended southward from the old watercourse, and of course carried the water northward along that ditch. The effect must have been apparent to the plaintiff when ditch F was dug; and it is also apparent that if ditch C had not been constructed prior to the digging of ditch F the water assembled therein would have been cast upon the defendant's land in a volume, and the plaintiff would have been responsible to the defendant for any injury caused thereby. The plaintiff evidently constructed ditch F with full understanding as to where the water assembled thereby would go, and he can not complain if it injured his own land instead of the land of the defendant.

There seems to be no controverted proposition of law in the case, and little conflict in the evidence. The propositions of law have been so uniformly decided in accordance with the views of the court below that we have deemed it unnecessary to cite even the authorities suggested.

The judgment is affirmed.