CLEMENCE FALCON, Appellee, v. F. P. BOYER, Appellant.

**Drainage:** NATURAL WATER COURSE. A water course is a natural stream of water usually flowing in a definite channel and discharging itself into some other stream or body of water. Its origin need not be exclusively the work of nature, but may be aided by the hand of man; and if, after becoming a flowing stream, it has remained in that condition for the prescriptive period, it becomes a water course as to the lands through which it flows and the rights of the owners thereof, and the right to divert or control it to the prejudice of riparian owners becomes fixed and settled. In the instant case previous owners made slight excavations to facilitate the flow over their lands in the natural course, and the water gradually cut a deep, wide channel along that course in which it flowed for many years, and thus it became a natural water course.

**Same:** RIPARIAN RIGHTS: DIVERSION OF WATER COURSE: DAMAGES: INJUNCTION. The owner of land through which there is a natural water course may divert the course of the stream on his own land, provided he returns the water back to its natural channel before it reaches the land of the lower riparian owner. Both the lower and upper owners are entitled to have this done, and where the water has been diverted from its natural channel and thrown upon the land of another he not only has a right of action for damages, but he may restrain the party from thus diverting the water to his prejudice.

**Injunction:** MANDATORY ORDER. Primarily the office of an injunction is to restrain rather than to compel the performance of an affirmative act; but if required to effectuate the principal purpose of the order the defendant may be required to do some affirmative act.

**Same:** WATER COURSES: INADEQUATE LEGAL REMEDY. Where the injury resulting from a nuisance is of a permanent character, and the damage flowing therefrom is original and can be compensated in one suit, the injured party has a plain, speedy and adequate rem-

edy at law; but where the injury is not of a permanent character and is subject to change without the intervention of human agency equity will intervene by way of injunction to protect the rights of the injured party. Thus equity will restrain the diversion of water from a natural stream by means of a ditch which is subject to change from time to time by the action of the water, so that the injury is continuing; especially where future injury is to be reasonably apprehended.

**Same:** DAMAGES. Where one is permanently enjoined from diverting the water of a stream from its natural course by means of a ditch, on the theory that it is a continuing injury to plaintiff, he should not at the same time be charged with damages on the theory that the injury was permanent, and thus be compelled to pay apprehended injury from a continuance of the ditch.

*Appeal from Linn District Court.*—HON. M. P. SMITH, Judge.

WEDNESDAY, JULY 2, 1913.

ACTION in equity to restrain the defendant from diverting the waters of a running stream from its natural course on his land to the land of the plaintiff and for damages. Judgment and decree for the plaintiff.—*Modified* and *Affirmed.*

*Jamison, Smyth & Hann,* for appellant.

*Voris & Haas,* for appellee.

GAYNOR, J.—The defendant, Boyer, is the owner of the S. E. ¼ of section 27. The plaintiff, Falcon, is the owner of the S. W. ¼ of 26 and the N. E. ¼ of section 34, and each was the owner of said land at the time of the happening of the matters complained of. That what is called by the plaintiff a branch of Indian creek, runs across plaintiff's land in section 26 and crosses the line between 26 and 27 about 27 rods north of the southeast corner of 27, passes through 27 in a southwesterly direc-

tion into section 34, and crosses the line between 27 and 34, 27 rods from the southeast corner of 27. That this so-called branch of Indian creek had its source some distance north and east of the point where it originally crossed the line between 26 and 27. That, from the point where it crossed the section line between 27 and 26, it continued in a southwesterly direction until it entered the main channel of Indian creek.

It appears that in November, 1905, the defendant built a dam across this branch of Indian creek just west of the line fence between sections 26 and 27, then dug a ditch upon his own land from that point south along the fence to the southeast corner of section 27; that, after building this dam and excavating the ditch, the waters of this stream were then forced to flow down the ditch so dug and, upon reaching the corner common to 26, 27, 34, and 35, were turned westward along the line between 34 and 27, and thence on until they emptied into the main Indian creek, at a point about 27 rods west of the corner common to the four sections aforesaid.

This action was brought in equity to restrain the defendant from so diverting the waters of said stream by means of said ditch and casting the same upon plaintiff's land in section 34, and for a mandatory order compelling the defendant to remove the dam from said stream so that the waters might flow in their natural channel, and to require the defendant to construct a dam in said ditch to prevent the waters from flowing therein, and to recover damages of the defendant on account of the matters complained of.

The defendant claims that by building the dam aforesaid, obstructing the flow of water in its natural channel in this branch of Indian creek, and by the digging of the ditch aforesaid, the defendant caused the waters to be diverted from their natural course and cast upon plaintiff's land in section 34, to his damage.

Plaintiff says that, by the digging of said ditch and the maintenance of said dam between 27 and 26, the surface water from about 1,200 acres of land was gathered into the ditch and cast upon plaintiff's land in section 34, together with the waters of the creek, no part of which would, in any manner, have been thrown upon plaintiff's land had it not been for the dam so constructed and maintained. All of which defendant denies.

The court, at the conclusion of all the testimony, found the issues for the plaintiff and entered a decree that the plaintiff had sustained and was entitled to damages against the defendant. The court further found that in diverting the water course and gathering together the waters from a large area of land, to wit, about twelve hundred acres, and conducting them in the artificial ditch cut by defendant, the defendant has destroyed, in part, the boundary line and the plaintiff's fences thereon between said sections 26 and 27, cut a large, deep, and irregular ditch on the plaintiff's land twenty or more feet in width at the east end, and from ten to fifteen feet in width at the west end, on the north line of 34, and to a depth of four feet or more, and has washed away the plaintiff's east and west fence from the southeast corner of section 27 westward and cut and washed his division line between sections 34 and 27, and washed away his land; but the court expressly finds that the said sum of $600 does not include any damages claimed, if any are claimed, by the plaintiff for the destruction of lateral support to his lands, and the plaintiff stated in open court that he makes no claim for damages on account of the destruction of the lateral support to his lands and waives all such claim. The court expressly finds and limits all damages awarded the plaintiff, to wit, in the sum of $600, to the damages caused by and on account of the unlawful diversion of the water course by the defendant, and to the washing of the plaintiff's lands by reason thereof, and the destruction of

his boundary lines and fences erected thereon, etc., and awards no damages for the destruction of lateral support. The court further finds that the ditch has encroached upon plaintiff's lands, and is still encroaching upon the plaintiff's lands, southward from the dam to the southeast corner of said section 27 and conducting the water westward from the southeast corner of said section 27 about four hundred and forty-four feet, and that the same is done without any right or authority whatever, and the defendant is hereby enjoined from maintaining the said dam and the said artificial ditch, and from diverting or conducting any of the water collected at said dam in or through the said artificial ditch, and is hereby commanded and ordered by this court to at once remove the said dam and permit the waters collected at said point to flow in their natural way and manner across the section line, between said sections 26 and 27, and southwesterly across the southeast corner of the defendant's lands in section 27, in the natural water course, and in what has been termed the east branch of Indian creek.

From the judgment so entered the defendant appealed and complained: First, That the court erred in finding that the stream or channel across which the dam was built was a natural water course.

To this we can not agree. It appears that what is termed the East branch of Indian creek extended from a point northeast of the place at which it crossed the section line of 27 and 26, thence southwesterly through defendant's land, and entered into what is called Indian creek; that the water flows naturally in that direction; that many years ago, more than twenty, the then owners of the land made some excavations along the line where this stream was at the time the same was dammed; that, by the action of the water, the ground had been gradually cut away until, at that time, it had a well-defined channel, bed, and

1. DRAINAGE: natural water course.

banks, and that water was coursing through it during most of the year prior to the building of the dam; that this stream so constructed and maintained had been continued for more than twenty years, with the knowledge and consent of the parties to this suit and their grantors. That such a stream becomes and is, in contemplation of law, a natural water course as to these parties and their rights there can be no doubt.

. There is no controversy here as to the facts touching this ditch, its construction and character. Therefore the question as to whether or not it is a water course is a question of law.

A water course is defined as a natural stream of water usually flowing in a definite channel, having a bed and sides, or banks, and discharging itself into some other stream or body of water. It is not necessary that its origin be exclusively the work of nature. It may be aided by the hand of man; but if thereafter it becomes a living flowing stream of water, with all the essential elements of a water course, and has remained in such condition for the prescriptive period, then, as to parties through whose lands it runs, and as to their rights, it becomes a water course, and their right to divert it or control it, to the prejudice of riparian owners, becomes fixed and settled.

It seems in this case a great many years ago the water that flowed in this stream subsequently followed this natural course; that the grantors of the plaintiff and defendant made some slight excavation in the ground tending to facilitate the flow of the water over their lands in this natural course. By the action of nature and the laws of gravitation, this water gradually cut a deep and wide channel through the ground, through which the waters had flowed for a great many years, discharging itself into what is known as Indian creek. The original source of the water is not shown in this record; but that they coursed through this channel for more than twenty years prior to

the time complained of, is shown by the evidence, and therefore, as to these parties, at that time, it was a natural water course.

The next question involves the right of the defendant to divert it from its course and to discharge it upon the lands of the plaintiff.

Our court has held (and this is but declaratory of the common law) that the owner of the land on both sides of the water course may divert the water, by artificial channel, upon his own land. He may change

2. SAME: riparian rights: diversion of water course: damages: injunction.

the course of surface water upon his own land by ditching or otherwise, providing, however, he return the water so diverted to its natural channel above the land of the adjoining lower proprietor without material diminution in volume. In the case of natural water courses, to justify such a diversion, the water must be returned to the water course before it reaches the land of the lower proprietor. This may be exacted of him both by the upper and lower riparian owners. See *Hinkel v. Avery,* 88 Iowa, 47; *Davison v. Hutchinson,* 44 N. J. Eq. 474 (15 Atl. 257); *Troe v. Larson,* 84 Iowa, 649; *Dorr v. Simmerson,* 127 Iowa, 551; *Parizek v. Hinek,* 144 Iowa, 563; *Van Orsdol v. Railway Co.,* 56 Iowa, 470; *Johnston v. Hyre,* 83 Kan. 38 (109 Pac. 1075); *Weiss v. Oregon Co.,* 13 Or. 496 (11 Pac. 255).

Where a stream of water, such as this, is diverted from its natural channel and from the line which it pursued in the course of nature and is thrown upon the land of another, the party on whose land it is thus thrown may not only maintain an action for damages but may restrain the party from thus diverting the water to his prejudice. This has been so frequently held and is now so well established that it needs no argument. In support, however, of this proposition, see 30 Am. & Eng. Law (2d Ed.) 362, 363; *Albright v. Railway Co.,* 133 Iowa,

644; *Holmes v. Calhoun County,* 97 Iowa, 360; *Geneser v. Healy,* 124 Iowa, 310; *Everett v. Christopher,* 125 Iowa, 668; *Meir v. Kroft* (Iowa), 80 N. W. 521; *Brown v. Armstrong,* 127 Iowa, 175; *Jones v. Stover,* 131 Iowa, 119; *Kane v. Bowden,* 85 Iowa, 347; *Priest v. Maxwell,* 127 Iowa, 744; *East St. Louis Ry. Co. v. Eisentraut,* 134 Ill. 96 (24 N. E. 760); *Union Pac. Ry. Co. v. Dyche,* 31 Kan. 120 (1 Pac. 243); *Tillotson v. Smith,* 32 N. H. 94 (64 Am. Dec. 355); Angell on Water Courses (6th Ed.), section 96; *Mohr v. Gault,* 10 Wis. 513 (78 Am. Dec. 687; *Vogt v. Grinnell,* 123 Iowa, 332; *Pettit v. Grand Junction,* 119 Iowa, 352; *Wharton v. Stevens,* 84 Iowa, 107; *Waverly v. Page,* 105 Iowa, 225.

It is next contended that the decree of the court is wrong in that it contained a mandatory order on the defendant. Upon this point we have to say that, while the office of an injunction primarily is to restrain, and not to compel, the performance of an act, yet, if it be necessary in order to make the restraining order effectual, the party against whom it is issued may be required to perform some affirmative act which will make effectual the main and controlling purpose of the order. It can not be maintained that, because an injunction primarily is to restrain, and not to compel, the performance of an act, it can not be used, when the effect of yielding obedience thereto requires the performance of some affirmative act. That is, the court may grant an injunction, the essential nature of which is to restrain, although, in yielding obedience to the restraint, the party may be required to perform some affirmative act. Otherwise often the injunction would be ineffectual. In support of this see *Allen v. Stowell,* 145 Cal. 666 (79 Pac. 371, 68 L. R. A. 223, 104 Am. St. Rep. 80); *Troe v. Larson,* 84 Iowa, 649. In this last case it is said: "A mandatory order is not to correct a wrong of the past, in the sense of redress for the injury

*3. INJUNCTION: mandatory order.*

already sustained, but to prevent further injury. The injury consists in the overflow of the lands of the plaintiff. It was not alone the building of the dam that caused the injury, but its maintenance or continuance, which is a part of the act complained of; and its maintenance can only be estopped, so as to prevent the injury, by its removal. The removal of the dam, wrongfully constructed, is necessary for and incidentally involved in the preventive redress which the law authorizes."

It is next contended that the damage in this case, as disclosed by the pleading and the evidence, was original damage, and not continuing, and therefore that an injunction would not lie; that the plaintiff had a plain, speedy, and adequate remedy for all the damages which he sustained; that they had all accrued at the time of the commencement of this action and were capable of definite ascertaining.

Whenever the nuisance is of such a character that, in its then condition, it is necessarily an injury, and it is shown, that it will continue in such condition unchanged (that is, that it is of a permanent character and can only be changed by human labor, by the interference of man), then the damage is original and may at once be fully compensated in one suit, and the party injured has a plain, speedy, and adequate remedy at law for the wrong. The rule is based upon the thought that, the nuisance being permanent and unchangeable, except by the hand of man, the damage that flows from it is also of a permanent character and, whether past or prospective, can be estimated and full compensation made to the party for the wrong done. But in this suit the structure complained of is not of a permanent character, has and is changing without the intervention of any human agency. It changes from natural causes applied to the conditions created, and the damage, instead of being original, is continuing, and in such a case equity

4. SAME: water courses: inadequate legal remedy.

will intervene by way of injunction. The evidence discloses that the ditch, as originally constructed, has changed, through the operations of nature upon it, both the ditch, as constructed by the defendant, and the east and west ditch on the plaintiff's land. It further discloses that in the future damages that are not now ascertainable are reasonably to be apprehended from the structure, if permitted to remain. Therefore equity steps in for the protection of the party against the apprehended injury. In such cases equity, looking to the then existing conditions, restrains the continuance, when future injury from a continuance is made reasonably certain, and enjoins and restrains the continuance of that from which the threatened injury proceeds, and, having by this power afforded protection from the future, grants redress for the injury already done, and may, in a mandatory order, require the undoing of that from which the threatened injury proceeds.

It is next claimed that the evidence does not disclose any injury to the land in section 26, except such as might arise from the destruction of the lateral support of plaintiff's land along the line of the ditch; that any claim for damage on this ground was waived by the plaintiff; that the damage, if any, of which plaintiff complained can be found only in the injury done to his land in section 34, and this damage exists only in the trespass of the defendant in appropriating plaintiff's land along the north line of section 34 as a passageway to conduct the water from his ditch to the main channel of the Indian creek.

We have examined the record in this case with some care upon the question of damage, and we are persuaded that the court, in the disposition of the case, treated the 5. SAME: wrong as continuing, and the damage as damages. continuing, for the purpose of the injunctional order, and treated it as original for the purpose of estimating damages. In this we think there was error, and that the damages allowed should be only such as were

sustained by the plaintiff up to the time of the commencement of the action. It would be inequitable to restrain the defendant from the continuance of the ditch, require him to close the ditch from further use and to open the original stream for the conduct of the water to Indian creek, and at the same time charge him with damages for apprehended injury from a continuance of the present conditions. A careful reading of the record satisfies us that the court erred in the allowance of damages to this extent; that the damage allowed should not exceed the actual damages then sustained, which we ascertain and fix at $200; and the court is directed to modify and correct the decree appealed from to this extent, and, as so modified, the judgment is affirmed and further orders that each party pay half the costs of this appeal.

*Modified* and *Affirmed.*