Roger P. FRANKLIN, Nancy Franklin, and Union Bank & Trust Company of Ottumwa, Iowa, as Trustee Under Marion H. Calhoun Trust Agreement, Dated June 15, 1965, Appellees,

v.

Larry L. SEDORE and Carolyn Sedore, Appellants.

No. 88–684.

Supreme Court of Iowa.

Jan. 24, 1990.

Rehearing Denied Feb. 16, 1990.

Gregg A. Pieper, Fairfield, for appellants.

Jerome M. Beaver of Kiple, Kiple, Denefe, Beaver & Gardner, Ottumwa, for appellees.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO and SNELL, JJ.

HARRIS, Justice.

Plaintiffs and defendants own adjoining farms which were long separated both by a state highway and a railroad running parallel to it. Abandonment by the railroad of its property led to various legal proceedings, including a quiet title action concerning the abandoned land and also to acts which led to this tort suit. Plaintiffs recovered substantial damages as a result of various conduct of the defendant Sedore on and near the abandoned railroad property. The critical issue on appeal is whether the plaintiffs, who are owners of the servient estate, acquired a prescriptive right to the existence of the railroad embankment. We conclude the jury could properly find they did. We affirm.

In 1969, 1971 and 1975 plaintiff Franklin[1] purchased farmland in Davis County. Defendant Sedore[2] owns land to the north. In the early 1940s Iowa highway 16, running generally northwest to southeast, was built between the two farms. Adjacent to the highway and to its south was a railroad long owned and operated by the Chicago Rock Island and Pacific Railroad. The line was abandoned in the 1970s; track was taken up in 1983.

Prior to the matters described a county drainage district was established in the area to carry off the water from the farms of both plaintiff and defendant. *See* Iowa Code ch. 455 (1989). The water was carried by open ditches south to the Des Moines River. The river flows (also northwest to southeast) south of the plaintiffs' farm. In 1942 the district constructed three ditches, including two which carried water from the Sedore farms across the Franklin farms to where they joined and continued on to the river. One of the ditches actually crosses from the Sedore farm through the Franklin farm. The other passes to the east.

As mentioned, the topography of the area is such that the Franklin land is generally servient to that of the Sedore's. The parties do not agree what precise direction the water would flow at given points in the area if it were not for the drainage ditches and the barriers created by the highway and the railroad embankment. It is however clear that, at least since the ditches were constructed in 1942, water from the Sedore farm was conveyed by way of the two ditches mentioned. Prior to abandonment of the railroad Sedore never conducted any farming operation south of the high-

---

**1.** There are three plaintiffs: Franklin, his wife Nancy who is co-owner of their farmland, and a bank which acts as trustee for one of the farms in which the Franklins also own an interest. For simplicity we refer to the plaintiffs jointly as Franklin and to all the property in which they are interested as one farm.

**2.** Sedore's wife, also a co-owner, is a named defendant. We refer to them in the singular.

way. And, prior to abandonment of the railroad, Franklin never farmed north of the fence which was maintained along the south of the railroad right-of-way.

Both parties claimed an interest in the . abandoned railroad, including irregular lots which were south of the right-of-way and which Franklin and his predecessors had previously claimed and farmed. Sedore took a quitclaim deed from the railroad and claimed through it. Franklin claimed that the lots as well as the south part of the abandoned railroad property reverted to his farm because the railroad held a mere easement right. *See McKinley v. Waterloo R.R.*, 368 N.W.2d 131, 133–34 (Iowa 1985) (under Iowa Code § 327G.77 (1989) abandoned railroad land reverts to the owner of adjacent realty).

Not all of the dispute has been conducted in accordance with the Marquis of Queensberry rules. Much, though certainly not all, of it took place at the courthouse. Sedore filed a criminal trespass charge against Franklin and also brought suit for an injunction to restrain Franklin from his land. Both were dismissed.

Franklin brought this suit seeking two remedies. A quiet title action—concerning the lots he had previously possessed and also the south half of the railroad right-of-way—was separated and tried earlier. Franklin prevailed. The quiet title decree favoring Franklin is not involved in this appeal. Franklin also sued in tort. The tortious acts, as found by the jury, fell into two categories: trespass and water diversion.

There seems little question about Sedore's conduct giving rise to the recovery for trespass or that it was unconscionable, even considering his quitclaim deed from the railroad. Sedore came south of the south right-of-way fence, destroyed Franklin's crops and planted his own crops in 1983, 1984 and 1985. When Franklin replanted, Sedore tore them out again. Sedore also planted crops during those same years on the south half of the abandoned

right-of-way and kept those crops. He sprayed a bean herbicide on corn land so that Franklin could not replant it to corn. He planted a weed crop, and let it go to seed. Prevailing winds then carried the seed across Franklin's farm.

Two lanes, used at least since the early 1940s to reach Franklin's land from the highway, were continually blocked or disrupted. Sedore repeatedly tore them up and also blocked the lanes with piles of railroad ties and other items. These facts were easily sufficient to support a recovery for trespass. The real dispute is over Franklin's recovery for water diversion.

I. Three of Sedore's assignments of error challenge jury instructions or rulings denying his requested instructions regarding water flow. By the instructions the jury was told that Sedore could lose his right to the flowage of water from his land by prescription. According to the instructions if Sedore, without objection for ten years, allowed the embankments to impede or divert the water from its natural course he was thereafter bound to accept the embankments as if they were the natural lay of the land. Sedore's rejected instructions would have told the jury that, under these facts, prescription could not run.

From the early 1940s, when the highway was built, until 1983 water from Sedore's farm did not directly cross the highway and railroad. Rather, because of the highway and railroad embankments, it moved southward along the highway ditch near neighboring land[3] into the drainage ditch which then crossed under the highway and a railroad trestle. The ditch crossed the highway and railroad at a point farther east than the water would have flowed but for the highway and railroad embankments.

In 1983 Sedore lowered a dry culvert under the highway and cut a channel through the railroad right-of-way. The result was to dump all his considerable surface water into one channel, flooding Franklin's farm. When Franklin responded by restoring the ground to its original

---

3. Land owned by Barbara Jeanette Jameson is to the east of the Sedore farm and is north of (and also across the highway and abandoned railway from) the east part of the Franklin land.

Sedore farms the Jameson farm. Jameson was a defendant at trial but is not a party to the appeal.

level Sedore would cut another channel through the right-of-way and again flood Franklin's land. Sedore also cut into the side of the drainage ditch, causing water from the ditch to flood onto Franklin's land. Franklin was obliged to cut a swale so it would drain back into the ditch.

General principles controlling individual drainage rights have been codified in Iowa Code chapter 465 (1989).[4] We have stated the same principle in numerous cases. *See e.g. Ditch v. Hess*, 212 N.W.2d 442, 448 (Iowa 1973) (owner of dominant estate has a legal and natural easement to drain surface waters onto servient estate). Ordinarily an artificial embankment, such as a railroad or highway, cannot properly form an impediment to the natural flow of water. *Ditch*, 212 N.W.2d at 448 (If a highway or railway surface is raised above adjoining land it "must be ditched and must have transverse bridges, culverts, or pipes which will permit free passage of water from one side to the other.").[5] Sedore's right under this principle to maintain the flow of his surface water, unimpaired by the highway or railroad, is however complicated by two important factors: the design of the drainage district and prescription.

When a drainage district is organized under Iowa Code chapter 455 it is contemplated that generally the water should drain according to its natural flow. But it is not required that it inevitably do so. Iowa Code section 455.5 provides:

> The levees, ditches, or drains herein provided for shall, so far as practicable, be surveyed and located along the general course of the natural streams and watercourses or in the general course of natural drainage of the lands of said district; *but where it will be more economical or practicable such ditch or drain need not follow the course of such natural streams, watercourses, or course of natural drainage, but may straighten, shorten, or change the course of any natural stream, watercourse, or general course of drainage.*

(Emphasis added.)

There is really no doubt, and we do not understand Sedore to contest the point, that rights to original watercourses may be waived by prescription. *Fennema v. Menninga*, 236 Iowa 543, 547, 19 N.W.2d 689, 691 (1945) (ditch or barrier altering natural water flow will not be enjoined after it is maintained ten years with express or implied consent). *See also Falcon v. Boyer*, 157 Iowa 745, 750, 142 N.W. 427, 429 (1913); 93 C.J.S. *Waters* § 26 (1956); 78 Am.Jur.2d *Waters* § 23 (1975). Rather than challenging the rule Sedore argues it has no application here. He relies on cases which hold that prescription does not run against the public. *See Stouder v. Dashner*, 242 Iowa 1340, 1349–50, 49 N.W.2d 859, 864 (1951); *Droegmiller v. Olson*, 241 Iowa 456, 462–63, 40 N.W.2d 292, 296–97 (1949). But, as these authorities point out, this is a limited exception to the prescription rule. It is limited to rights of the public; easements still run against rights of private individuals. In *Brightman v. Hetzel*, 183 Iowa 385, 395, 167 N.W. 89, 92 (1918), we defined the limits of the exception this way:

> The rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, *as between private individuals*, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public.

(Emphasis added.)

In this private dispute rights could arise or be waived by prescription. The trial court was correct in so instructing the jury.

II. The case was submitted to the jury wholly by special verdicts under Iowa

---

4. Section 465.22 provides in material part:
   Owners of land may drain the land in the general course of natural drainage by constructing or reconstructing open or covered drains, discharging the drains in any natural watercourse or depression so the water will be carried into some other natural watercourse, and if the drainage is wholly upon the owner's land the owner is not liable in damages for the drainage unless it increases the quantity of water or changes the manner of discharge on the land of another....

5. *See also* Iowa Code § 465.23 (when natural flow leads to highway, owner may, in accordance with directions of officials maintaining highway, enter and connect drain or ditch).

rule of civil procedure 205. There was no general verdict. Rather the jury was asked certain factual questions, the answers to which provided the basis for entry of judgment by the court. On appeal Sedore protests this method of submission, principally on the basis of his legal theory which we have already rejected. He also complains of the lack of marshaling instructions.

We have approved special verdicts as an ideal method of implementing a jury's fact-finding function in complex litigation. *Poyzer v. McGraw,* 360 N.W.2d 748, 753 (Iowa 1985). Special verdicts contribute uniquely to the truth-finding process for the very reason Sedore seems to complain of them. The process diverts the juror's attention away from any preconceived notions of desired results and forces it upon the precise matters which should claim a juror's attention. It was well within the trial court's discretion to employ special verdicts in this case.

III. We have considered, and now reject, Sedore's other assignments of error. To discuss them would unduly extend this opinion and yield nothing of precedential value. Counsel for appellee is admonished that, under rule of appellate procedure 14(e), citations must be made, where applicable, to the Iowa Reports as well as to the Northwestern Reporter. Compliance would greatly assist our research.

AFFIRMED.